William Henry HANSON,
Plaintiff–Appellant,

v.

Ralph Stanley WALLER, LVL Inc., National Car Rental System Travelers Insurance Company, Defendants–Appellees.

No. 88–8406.

United States Court of Appeals,
Eleventh Circuit.

Nov. 20, 1989.

Douglas L. Breault, Columbus, Ga., for plaintiff-appellant.

James P. Boston and Bryan F. Dorsey, R. Chris Irwin & Associates, Atlanta, Ga., for defendants-appellees.

Before RONEY * and HILL *, Senior Circuit Judges, and MARCUS **, District Judge.

MARCUS, District Judge:

This wrongful death case appears before us on one charge of error in the district court's instructions to the jury, three charges of error in rulings upon evidentiary issues and one claimed error in a certain statement made by the district court in the presence of the jury. We find no reversible error in any of these claims and, accordingly, affirm the judgment of the district court.

---

* See Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

** Honorable Stanley Marcus, U.S. District Judge for the Southern District of Florida, sitting by designation.

## I. *Factual Background*

Appellants brought this action on behalf of the deceased, Alfaretta Spina ("Spina") who died of injuries sustained after being struck by a truck driven by Appellee Ralph Waller ("Waller"). On April 25, 1985, a tractor-trailer truck operated by Waller was stopped for a red light in the far right lane of a four lane street at a downtown Columbus, Georgia, intersection. Ms. Spina, 77 years old at the time, started to walk from the sidewalk to the right of the truck across the street. When she was in front of the truck, the light changed from red to green, and the truck proceeded forward, striking the deceased.

At trial, Appellants contended that the truck driver was negligent in stopping in the crosswalk, failing to keep a proper lookout, failing to yield to a pedestrian in the crosswalk and in failing to discover the pedestrian. Appellees argued that Waller, who never saw the deceased until exiting the truck after the deceased was struck, was not negligent, but rather that Ms. Spina was negligent in traveling into the street on a yellow light, in failing to get out of the way of the truck, in hesitating in her journey in front of the truck and in walking too close to the truck. The jury found for the Appellees.

## II. *Jury Charge of Accident*

First, Appellants contend that the district court committed reversible error by giving a charge on "accident" to the jury, because, they claim, the evidence necessarily showed that either the truck driver was negligent or the deceased was negligent. The district court charged the jury on "accident" in these terms:

> Now, finally, in talking about negligence, comparative negligence, giving you all these statutes, if you find that nobody was negligent in the circumstances here—if you find that the truck driver was not negligent and no negligence on his part was a proximate cause of this injury, if you find that the deceased lady was not negligent, no negligence on her part was a proximate cause—then you would've concluded that there wasn't any negligence on the part of anybody that was the cause of this incident, that it was something that just happened, what the law calls a pure accident. That means where there was not any negligence on the part of anybody that caused it. It was something that just happened.

> Of course, if you conclude that, then the plaintiff would not be entitled to recover because those two things that I first pointed out had to be proved would not have appeared. So it's just a question of what you determine.

*See* Record Vol. 2 at 227.

■ Georgia law on the charging of accident is set out in *Chadwick v. Miller*, 169 Ga.App. 338, 312 S.E.2d 835, 840 (1983):

> The defense of accident in this state is to be confined to its strict sense as an occurrence which takes place in the *absence of negligence* and for which *no one would be liable*. Unless there is evidence authorizing a finding that the occurrence was an "accident" as thus defined, a charge on that defense is error.

(emphasis in original) (citing *Morrow v. Southeastern Stages* [68 Ga.App. 142], 22 S.E.2d 336 (Ga.App.1942); *Toles v. Hair* [83 Ga.App. 144], 63 S.E.2d 3 (Ga. App.1951) (adopting definition of accident applied by the Georgia Supreme Court in *Everett v. Clegg* [213 Ga. 168], 97 S.E.2d 689 (Ga.App.1957)).

Under Georgia law, a jury charge on accident is proper if there is evidence to support the conclusion that the event in question was an accident. *Kent v. Henson*, 174 Ga.App. 400, 330 S.E.2d 126, 129 (1985) (no error in giving charge on accident); *Reed v. Heffernan*, 171 Ga.App. 83, 318 S.E.2d 700, 705 (1984) (no error); *Wilhite v. Tripp*, 179 Ga.App. 428, 346 S.E.2d 586, 587 (1986) (no error); *Southern Railway Co. v. Georgia Kraft Co.*, 188 Ga.App. 623, 373 S.E.2d 774, 777 (1988) (no error where jury was given accident charge in situation where the evidence presented the jury with an alternative that the collision could have occurred, notwithstanding the exercise of due care on the part of both parties). In the instant case, our task is to determine whether "evi-

dence presented to the jury ... could conceivably support a finding that neither [the decedent] nor Appellees were negligent." *Andres v. Roswell–Windsor Village Apartments*, 777 F.2d 670, 674 (11th Cir. 1985) (holding that charge as to legal accident was proper under Georgia law). Here the charge was proper.

▓ In our view, the district court's instruction on accident did no more than inform the jury that if they found that neither party was negligent, then they would have found that what occurred was an accident—an occurrence which took place in "the absence of negligence and for which no one would be liable." *Chadwick*, 312 S.E.2d at 840. The evidence presented to the jury was sufficient to support a finding that neither party was negligent and, therefore, it was not error to charge an accident. To begin, testimony was presented that Waller could not see a pedestrian walking directly in front of the truck. *See* Record, Vol. 2 at 100, 125–36. Further testimony revealed that none of the witnesses to the event saw from where Ms. Spina began to walk across the street. *See* Record, Vol. 2 at 33, 53. Therefore, the deceased could have been walking on the sidewalk directly beside the side of Waller's truck and then turned left to cross the street in front of the truck. The evidence was also ambiguous as to where the truck had stopped—at or before the unmarked crosswalk. In addition, testimony was presented to show that there was shrubbery in the area and that the shrubbery could be as high as 20 feet. *See* Record, Vol. 2 at 130–31. This shrubbery, the jury could have concluded, blocked the truck driver's view of the deceased. Waller testified that he did look to his left and right prior to accelerating. *See* Record, Vol. 2 at 100, 110. Moreover, although no witness at trial had been in a position to say that the light was green for the deceased when she began to cross the street, the jury could have concluded that the light was green for her at the time she began to cross. One witness, who was in his car stopped at the traffic light heading in the opposite direction of the truck, said that the light turned green for his direction at a time when Ms. Spina was in front of the truck. *See* Record Vol. 2 at 26, 34. We add that no testimony was presented concerning possible negligence of a third party for the inoperative "walk/don't walk" sign.

In short, evidence was presented from which the jury could reasonably conclude that Defendant Waller had not breached any duty of reasonable care that he owed to pedestrians. Evidence showed that he looked both ways for pedestrians and not seeing anyone, nor being able to see anyone who was walking the path of deceased in crosswalk or anywhere else near his vehicle, he proceeded forward at an ordinary pace. Moreover, evidence showed that the deceased had the green light and proceeded to cross, with the light, but that when the light turned yellow and then red, she was unable to move to a position where she would not be struck. The evidence was more than sufficient to support a jury finding that the deceased was not negligent in her actions as well.[1] Accordingly, sufficient evidence was adduced at trial to justify the district court's instruction on acci-

---

1. We are unpersuaded by Appellants' contention that it is error to charge legal accident in "blind spot" cases. Neither of the two cases cited by Appellants compel such a conclusion. In *Stroud v. Woodruff*, 183 Ga.App. 628, 359 S.E.2d 680 (1987), the court had stated hypothetically that "any error which may have been committed by the trial court in charging on the doctrine of legal accident was rendered moot by the jury's verdict awarding damages to the appellant [plaintiff]...." *Id.* 359 S.E.2d at 682. Not only did the court not decide whether the accident charge was justified, the court also did not address the issue of whether the existence of a blind spot precludes a finding of non-negligence. Thus, the *Stroud* case fails to provide guidance. The other "blind spot" case, *McClure v. Georgia Power Co.*, 171 Ga.App. 257, 319 S.E.2d 93 (1984), simply fails to provide analysis on the impact of the existence of a blind spot. The court summarily stated that "under the circumstances here, the charge on legal accident was improper." *Id.* 319 S.E.2d at 96. However, the court did not evaluate which circumstances made the charge improper. The existence of a blind spot does not necessarily preclude a finding of non-negligence on the part of the driver whose vehicle has a blind spot and which blind spot was a causal factor in a collision. The cases cited by Appellants do not prohibit such a finding.

dent, and we find that no error was committed.

### III. *Evidentiary Issues*

Appellants further charge as error three events at trial all relating to the testimony of Detective Mark Starling, called on direct examination by the Plaintiff. Appellants contend that the district court committed error by permitting the detective, who was qualified as an expert, to testify that in his opinion neither the truck driver nor the pedestrian did anything wrong or anything that contributed to the accident. Appellants also claim error because the district court briefly questioned the witness. The following sequence of questioning between counsel for Defendant and Detective Starling occurred at trial:

Q: Well, I just want to be sure, you know. There's a lot and I may have left something out.

Okay. Now, having completed your investigation and all on this accident and having—have you been able to reconstruct how it happened?

A: I have an opinion, yes, sir.

Q: Why don't you just tell us how you've been able to reconstruct how this accident happened?

A: How I reconstructed it was based on my findings from what the witnesses told me plus what we found at the scene plus what the driver told us.

Q: And your conclusion, sir?

A: Was that the deceased was attempting to cross Fourteenth Street. She came to the intersection. Traffic westbound and eastbound were stopped for red traffic signal. Evidently she assumed she had the right-of-way and stepped out in front of the truck. The driver did not see her, the light turned green and he proceeded westbound on Fourteenth Street.

Q: Do you think the driver did anything that contributed to this accident?

MR. BREAULT (Counsel for Plaintiff): Objection, Your Honor. That's for the jury to decide.

THE COURT: Yes—

MR. DORSEY: Judge, may I speak on that?

THE COURT: Well—

MR. DORSEY: I think he's an expert witness based on the amount of automobile reconstruction he's done. I think under rule seven oh whatever it is I think he can—I think he can give his opinion.

THE COURT: Well, yes, I suppose so, because I listened to his testimony about his training and qualifications and so on. So I think he'd come within the category of a witness who would have the right to express an opinion about it.

MR. BREAULT: Okay.

THE COURT: I wouldn't say it of every police officer, but I would say it of this one, because of his training and background and experience. So I'll let him answer the question.

THE WITNESS: Would you please repeat the question, please?

BY MR. DORSEY:

Q: Just thinking about something else here. I think I asked you if the truck—if Mr. Waller, who was driving the truck, in your opinion did anything that contributed to this accident.

A: No.

Q: No, meaning he did not do anything that contributed to this accident?

A: In my opinion he did nothing wrong.

Q: All right, sir. Now, in your opinion did the deceased do anything that contributed to the accident?

A: No.

MR. DORSEY: All right, sir.

THE COURT: In other words, is what you're saying is it was just pure accident?

THE WITNESS: In my opinion, Judge, this was nothing but just a pure accident.

MR. DORSEY: Isn't it your opinion, Officer Starling, that the deceased violated the pedestrian rules?

MR. BREAULT: Just a minute now. I object. He's given his opinion and—

THE COURT: No, he asked about the driver. Now he's asking about the pedestrian.

MR. BREAULT: He's already answered the pedestrian did nothing wrong either.

MR. DORSEY: Well, I'm asking the question a slightly different way, preparing for some impeachment.

THE COURT: Go ahead. Go ahead.

Q: In your opinion, did the pedestrian commit any violations?

A: Pedestrian did not commit any chargeable violations.

*See* Record Vol. 2 at 140–42.

## A. Opinion of Detective Starling

■ Based on testimony presented concerning Detective Starling's background on accident reconstruction and investigation, there can be no doubt that he was properly qualified as an expert witness pursuant to Rule 702 of the Federal Rules of Evidence. Appellants do not dispute that Starling was properly qualified as an expert. Rather, the issue here is whether it was proper for the expert to give the kind of opinion he rendered at trial. Fed.R.Evid. 704(a) provides:

> Except as provided in subdivision (b) testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.

In our view, the opinion rendered, in going to an ultimate issue, was proper in accordance with Rule 704(a).

■ The adoption of Rule 704 abolished the so-called "ultimate issue rule" which proscribed opinion testimony that ostensibly invaded the province of the jury. *See* Fed.R.Evid. 704 Advisory Committee Note;[2] *Haney v. Mizell Memorial Hospital,* 744 F.2d 1467, 1473 (11th Cir.1984); 3 J. Weinstein & M. Berger, Weinstein's Evidence Para. 704 [01]–[02] (1982); 11 J. Moore & H. Bendix, Moore's Federal Practice §§ 704.01 [3]–704.10 (2d ed. 1982). As this Court has noted, the distinction between whether challenged testimony is either an admissible factual opinion or an inadmissible legal conclusion is not always easy to perceive. *Haney v. Mizell Memorial Hospital,* 744 F.2d at 1473–74; *see Owen v. Kerr–McGee Corp.,* 698 F.2d 236, 240 (5th Cir.1983); *see generally* Comment, *The Admissibility of Expert Witness Testimony: Time to Take the Final Leap?* 42 U. Miami L.Rev. 831 (1988).

As we previously observed in the *Haney* case:

> Our research indicates that the law in this circuit pertaining to the admissibility of an expert's opinion couched in legal terms is not crystal clear. We have found one decision antedating the adoption of the Federal Rules of Evidence which appears directly on point. The former Fifth Circuit, in *Steinberg v. Indem. Ins. Co.,* 364 F.2d 266, 273–74 (5th Cir.1966), held in a medical malpractice action that an expert witness could testify that in his opinion malpractice had occurred. The court expressly rejected the argument that this opinion was objectionable as going to the ultimate legal issue in the case, reasoning that malpractice actions required expert testimony and this type of opinion aided the trier of fact. *Id.* at 274.
>
> We also have discovered a pre-Federal Rules of Evidence decision which reasonably can be seen as undercutting the force of the *Steinberg* holding. In *Bender v. Dingwerth,* 425 F.2d 378, 384 (5th Cir.1970), the court stated that allowing plaintiff's doctors to testify that in their opinion the defendant committed acts amounting to malpractice "invade[d] the fact finding function of the jury." The

---

**2.** These notes provide in pertinent part:

> The abolition of the ultimate issue rule does not lower the bars so as to admit all opinions. Under Rules 701 and 702 opinions must be helpful to the trier of fact, and Rule 403 provides for exclusion of evidence which wastes time. These provisions afford ample assurances against the admission of opinions which would merely tell the jury what result to reach, somewhat in the manner of the oath-helpers of an earlier day. They also

stand ready to exclude opinions phrased in terms of inadequately explored legal criteria. Thus the question, "Did T have capacity to make a will?" would have sufficient mental capacity to know the nature and extent of his property and the natural objects of his bounty and to formulate a rational scheme of distribution? would be allowed.

Fed.R.Evid. 704 advisory committee note (citation omitted).

court then noted with approval law of the forum state which would exclude this opinion on the basis that what constitutes negligence or malpractice is a mixed question of law and fact. *Id.* To be sure, the view expressed by the *Bender* court is dictum, and is in part based on state law. The *Bender* decision nevertheless is difficult to ignore or dismiss out of hand.

More recent decisions underscore the lamentable fact that the adoption of Rule 704 did not totally dispel the confusion over the admissibility of expert opinions arguably amounting to conclusion of law. *See, e.g., Owen v. Kerr–McGee Corp.,* 698 F.2d at 240 (court read former Fifth Circuit cases as proscribing expert opinion amounting to legal conclusion, and noted after discussing Rule 704 that not only did such testimony invade the province of the court, it was irrelevant as well); *United States v. Fogg,* 652 F.2d 551, 556–557 (5th Cir. Unit B 1981), *cert. denied,* 456 U.S. 905, 102 S.Ct. 1751, 72 L.Ed.2d 162 (1982) (court, in tax evasion case, held that accountant's opinion that certain funds would be considered constructive dividends admissible since not phrased as judicial instructions to jury and witness should have adequate knowledge of tax laws to allow introduction of his opinion); *United States v. Milton,* 555 F.2d 1198, 1203 (5th Cir.1977) (court in illegal gambling prosecution, held admissible expert testimony that certain wagers were "lay off" bets, yet took pains to note that although Rule 704 abolished the per se rule against testimony on ultimate issue of fact, court still "must remain vigilant against the admission of legal conclusions.")

*Haney v. Mizell Memorial Hospital,* 744 F.2d at 1474 n. 7.

■ Here, the record reflects that the district court considered whether the opinion asked of Detective Starling would be proper under the rules of Evidence when he ruled adversely to Appellants. *See* Record Vol. 2 at 140–141. To be admissible under rule 704, an expert's opinion on an ultimate issue must be helpful to the jury and also must be based on adequately ex-

plored legal criteria. *Haney,* 744 F.2d at 1474. Although the record does not fully reveal the district court's reasons for ruling as it did, the court could easily have concluded that the expert's opinion on whether the driver or pedestrian contributed to the accident or did anything wrong would be helpful to the jury in deciding whether either party was negligent. The questions asked the expert by counsel were not phrased in terms of inadequately explored legal criteria. We conclude that no error can be assigned to these opinions rendered by the expert witness.

### B. Questioning by District Court

■ A more difficult question is posed by the Appellants' claim that the district court erred by asking Detective Starling the following question—"In other words what you're saying is it was just pure accident?"—and in receiving the following answer by the witness Starling—"In my opinion, Judge, this was nothing but pure accident." *See* Record Vol. 2 at 142. To begin, it is within the province of the trial court's discretion to ask questions of witnesses. Rule 614 of the Federal Rules of Evidence provides in pertinent part:

> Rule 614. Calling and Interrogating of Witnesses by Court
>
> (b) Interrogation by court. The court may interrogate witnesses whether called by itself or by a party.
>
> (c) Objections. Objections to the calling of witnesses by the court or to interrogation by it may be made at the time or at the next available opportunity when the jury is not present.

The authority of the judge to question witnesses is well established. *See* Fed.R.Evid. 614 Advisory Committee Note. Such authority, however, is "abused when the judge abandons his proper role and assumes that of [an] advocate." *Id.*

In *Moore v. United States,* 598 F.2d 439, 442 (5th Cir.1979), the former Fifth Circuit discussed the trial court's proper role in the presentation of evidence in a criminal proceeding.

It is axiomatic ... that '[t]he trial judge has a duty to conduct the trial carefully, patiently, and impartially. He must be above even the appearance of being partial to the prosecution.' On the other hand, a federal judge is not a mere moderator of proceedings. He is a common law judge having that authority historically exercised by judges in the common law process. *He may comment on the evidence, may question witnesses and elicit facts not yet adduced or clarify those presented,* and may maintain the pace of the trial by interrupting or cutting off counsel as a matter of discretion[.] *Only when the judge's conduct strays from neutrality is the defendant thereby denied a constitutionally fair trial.* (citations omitted) (emphasis added)

Although *Moore* concerned a criminal proceeding, the analysis is equally applicable to the civil arena.

■ The record of this case does not show that the trial court strayed from neutrality or assumed the role of an advocate. The question concerning "pure accident" was merely an attempt at clarification on the part of the trial court. And it is entirely proper for the trial court to make inquiries of a witness in order to clarify the evidence presented. *See Van Leirsburg v. Sioux Valley Hospital,* 831 F.2d 169, 172–73 (8th Cir.1987); *Mosco v. Baltimore & Ohio Railroad,* 817 F.2d 1088, 1093 (4th Cir.1987).

■ Moreover, the transcript shows that Appellants failed to object either at the time the question was asked or at the next available opportunity when the jury was not present. Rule 614(c), relating to objections, is designed to relieve counsel of the embarrassment attendant upon objecting to questions by the judge in the presence of the jury, while at the same time assuring that objections are made in apt time to afford the opportunity to take possible corrective measures. *Id.* Although Rule 614(c) does not entirely relieve the litigant of his duty to object in order to preserve the exception on appeal, where a party fails to object in a timely manner, i.e., at the next available time when the jury is not present, objection to the alleged error will be deemed waived unless it constitutes plain error. *See United States v. Vega,* 589 F.2d 1147, 1152–53 (2d Cir.1978) (waiver); *United States v. Hickman,* 592 F.2d 931, 936 (6th Cir.1979) (plain error standard); *Weissenberger's Federal Evidence* § 614.4 (1987).

We conclude that neither the question posed by the district court nor the opinion provided by the expert constituted error.

C.  Admission of Letter Into Evidence

Finally, Appellants contend that it was error to allow the Defendant at trial to put into evidence, a letter from Appellants' first attorney Mr. Thompson to Defendant's attorney Mr. Dorsey. The letter, as read into the evidence, indicated the following:

> Dear Mr. Dorsey: As per my previous letter to you of June the 29th, 1987, enclosed herewith please find copies of the photographs taken from the scene of the accident along with photographs taken from the same type truck the Defendant Waller was driving, which shows it impossible for him to see Ms. Spina if in crossing the street she had reached a position directly in front of the truck when the traffic light changed. If you care to discuss the matter with me, please feel free to call and with kindest personal regards, I remain, Very truly yours, Thomas L. Thompson, Jr.

*See* Record, Vol. 2 at 197. Appellants claim that the contents of this letter contain an offer of compromise excluded by Fed.R.Evid. 408 [3] and objected at trial on

---

**3.** Rule 408, Fed.R.Evid. provides:

Evidence of (1) furnishing or offering or promising to furnish or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require exclusion when the evidence is of-

those grounds. *See* Record, Vol. 2 at 194. Upon the protest of Mr. Breault, Appellants' trial counsel, that "It's [the letter] an invitation to try to settle the case." the district court stated that "... there's nothing said in that letter about compromise, nothing said in the letter about compromise. He's not offering to take any amount. He's not asking them to pay any amount. There's nothing said in the letter about compromise." *See* Record, Vol. 2 at 194–95.

■ We agree with the district court that the letter does no more than mention that it enclosed photographs of the accident and stated that the photographs showed that the truck driver would not have been able to see the deceased if she had been standing directly in front of the truck and that counsel asked opposing counsel to discuss this case. The contents of the letter are not evidence of "(1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept a valuable consideration in compromising or attempting to accept, a claim which was disputed as to either validity or amount." Fed.R.Evid. 408.

■ The letter, not constituting an offer of compromise, was properly admitted as an admission by a party opponent, pursuant to Fed.R.Evid. 801. Rule 801(d)(2)(C)[4] specifically excludes statements used against a party which were made by another person authorized by the party to make a statement concerning the subject, from the definition of hearsay. This provision has been applied to allow in evidence statements made by attorneys in a representational capacity. *See, e.g., United States v. Ojala*, 544 F.2d 940, 946 (8th Cir.1976); *Williams v. Union Carbide Co.*, 790 F.2d 552, 555–56 (6th Cir.1986). Although an attorney does not have authority to make an out-of-court admission for his client in all instances, he does have authority to make admissions which are directly related to the management of litigation. *United States v. Dolleris*, 408 F.2d 918, 921 (6th Cir.1969), *cert. denied*, 395 U.S. 943, 89 S.Ct. 2014, 23 L.Ed.2d 461 (1968). In the instant case, the letter sent by Mr. Thompson to Mr. Dorsey was clearly related to the management of the Appellants' litigation. Therefore, the contents of the letter fall within the hearsay exclusion provided by Rule 801(d)(2)(C). Finally, we observe that the Appellants have not demonstrated that the revelation of the contents of the letter was harmful to their case at trial. Accordingly, we find no error.

## IV. *Trial Court's Statement Regarding Expert's Qualifications*

■ Appellants also assign as error the court's expression of its opinion of the qualifications of the witness, Detective Starling. *See* Record Vol. 2 at 141. In our view, no error was committed. The district judge merely stated that based on listening to testimony about the witness' training and qualifications this particular police officer was qualified as an expert witness to answer a particular question posed to him. No error was committed in explicating such a ruling in the presence of the jury. And again, no objection was made by Appellants at trial.

Appellants' contentions of error are unavailing and the judgment of the district court is AFFIRMED.

---

**4.** Rule 801(d)(2), Fed.R.Evid. provides:

(2) Admission by party-opponent. The statement is offered against a party and is (A) the party's own statement in either an individual or a representative capacity or (B) a statement of which the party has manifested an adoption or belief in its truth, or (C) a statement by a person authorized by the party to make a statement concerning the subject, or (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship, or (E) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy.

fered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.