37 F.3d 1496
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Arlis HICKS, Defendant-Appellant.
 No. 93-5968.
 United States Court of Appeals, Fourth Circuit.
 Submitted: Aug. 30, 1994.
Decided: Oct. 21, 1994.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. T.S. Ellis III, District Judge. (CR-93-276-A)
 Brian McCormack, Charles J. Maxfield, DUNN, MCCORMACK, MACPHERSON & MAXFIELD, Fairfax, VA, for Appellant. Helen F. Fahey, United States Attorney, Irvin McCreary Allen, Special Assistant United States Attorney, Alexandria, VA, for Appellee.
 E.D.Va.
 AFFIRMED.
 Before WIDENER, HAMILTON, and MOTZ,
 OPINION
 PER CURIAM:
 
 
 1
 Following a jury trial, Arlis Hicks was convicted of assaulting a correctional officer, in violation of D.C.Code Sec. 22-505(b) (1989), and being a prisoner in possession of a weapon, in violation of 18 U.S.C.A. Sec. 13 (West Supp.1994) (assimilating Va.Code Ann. Sec. 53.1-203(4) (1991)). Hicks appeals his conviction, claiming that the district court's interrogation of witnesses and its comments during the trial deprived him of a fair trial. Finding his claims lack merit, we affirm Hicks' conviction.
 
 
 2
 Around midnight on February 19, 1993, Corporal Orlando Harper, a correctional officer at Lorton Prison, was conducting a midnight count of inmates in Cell Block Three. When Harper reached Arlis Hicks' cell, an altercation occurred between Harper and Hicks; Hicks stabbed Harper in the eye with a broomstick.
 
 
 3
 A grand jury indicted Hicks on one count of assaulting a correctional officer and one count of being a prisoner in possession of a weapon. At Hicks' jury trial, the prosecution witnesses testified that, from inside his locked cell, Hicks made an unprovoked attack on Harper as the guard walked past his cell. According to the defense witnesses, Harper and Hicks "had words," and then Harper ordered Hicks' cell door opened, entered with the broomstick, and was stabbed during an ensuing fight.
 
 
 4
 The jury convicted Hicks on both counts and the court sentenced him to 140 months in prison. Hicks timely appealed.
 
 
 5
 On appeal, Hicks complains that he was denied a fair trial because the trial judge's conduct demonstrated partiality. Specifically, he charges that the judge improperly interrupted and questioned wit nesses and improperly commented on and ruled on the admissibility of testimony.
 
 
 6
 Hicks claims that his "star witness" was supposed to be Sergeant Moseley, the Assistant Training Coordinator, who planned to testify that Harper was placed on the midnight shift because of his bad temper. However, the trial judge interrupted Moseley's direct examination and determined that he could not give the desired testimony because it was hearsay.
 
 
 7
 In addition, Hicks complains that the judge improperly strengthened the government's case by asking questions of government witness Officer Perry. Under direct examination, Perry testified that he was on duty at the time of the incident and was watching Harper conduct the midnight count of inmates. He stated that he was operating the panel box that controlled, among other things, the individual cell doors. He testified that Harper was carrying mail as he travelled down the tier and that he saw a stick come out of a cell and strike Harper in the face. At this point, the judge began questioning the witness, soliciting testimony on how Perry knew Hicks' cell door was shut when Harper was stabbed and whether anyone else could have opened the cell door.
 
 
 8
 Rule 614(b) of the Federal Rules of Evidence allows a court to "interrogate witnesses, whether called by itself or by a party." See also Glasser v. United States, 315 U.S. 60, 82 (1942); United States v. Seeright, 978 F.2d 842, 847 (4th Cir.1992). This Court has described the trial judge's duties as follows:
 
 
 9
 [T]he role of the district judge ... is "not that of an umpire or of a moderator at a town meeting. He sits to see that justice is done in the cases before him; and it is his duty to see that a case on trial is presented in such way as to be understood by the jury, as well as by himself. He should not hesitate to ask questions for the purpose of developing the facts; and it is no ground of complaint that the facts so developed may hurt or help one side or the other."
 
 
 10
 United States v. Parodi, 703 F.2d 768, 775 (4th Cir.1983) (quoting Simon v. United States, 123 F.2d 80, 83 (4th Cir.), cert. denied, 314 U.S. 694 (1941)). If, however, a trial judge's questions or comments are so prejudicial that they deprive a defendant of a fair trial, as opposed to a perfect trial, then the defendant is entitled to a new trial. Parodi, 703 F.2d at 776. To decide whether such abuses have occurred, the appellate court must look not only at the challenged questions, but also at the judge's demeanor and conduct "throughout the trial, to search the record for evidence of partiality or bias that might indicate a belief on the judge's part the defendant[ ][was] 'guilty' or suggest that he had usurped the function of prosecutor." Id.
 
 
 11
 In questioning defense witness Moseley, the district court was determining whether the testimony he planned to give was hearsay or was based on personal knowledge. A court's authority to question a witness allows the judge to ask questions to determine whether a witness' testimony is admissible. See United States v. Lueth, 807 F.2d 719, 729 (8th Cir.1986) (finding judge's questions to determine testimony's admissibility appropriate in light of defense objection on hearsay grounds). Although the court originally concluded that Moseley's testimony was inadmissible heresay, later, in the presence of the jury, the court permitted defense counsel on re-direct examination of Moseley to "inquire further ... to ... establish the basis" for Moseley's knowledge of the assignment of the midnight shift to Corporal Harper. Defense counsel did not further question Moseley on this point; however, counsel did question Moseley and Moseley testified at some length on other aspects of Corporal Harper's assertedly improper conduct.
 
 
 12
 Furthermore, Hicks does not argue that the testimony he sought to elicit from Moseley as to the reason for Harper's shift change was not hearsay. Instead he claims that the court lacked the authority to make such an evidentiary determination without receiving an objection about the testimony from the government. Rule 802 of the Federal Rules of Evidence states generally that hearsay is not admissible. It does not state that hearsay is admissible if the opposing party fails to object to its introduction.
 
 
 13
 The trial court's questions to government witness Perry also were not improper. The court's questions were geared toward clarifying how Perry knew that Hicks' cell door was closed and what basis he had for stating that he was the only person who could have opened Hicks' cell door. Hicks does not challenge the relevancy of the court's questions. He claims merely that the questions were redundant. It is within a judge's authority to seek clarification of a witness' testimony. See Hanson v. Waller, 888 F.2d 806, 812-13 (11th Cir.1989). In this case, we find that the elicited testimony elaborated on Perry's earlier testimony, but was not redundant. Furthermore, although it would have been preferable for the prosecution to ask these questions rather than the trial judge, the mere fact that the judge posed the questions did not deprive Hicks of a fair trial.
 
 
 14
 Viewing the record as a whole, Hicks was not denied a fair trial. The judge asked both Moseley, a defense witness, and Perry, a prosecution witness, questions to establish the basis for portions of their testimony. The fact that the court found an admissible basis for Perry's testimony and not Moseley's testimony did not render the trial unfair.
 
 
 15
 Over the prosecution's objections, the court also allowed Moseley to testify on issues such as Harper's suitability as a prison guard. In addition, the judge's conduct toward the prosecution shows that he exhibited no favoritism. On several occasions, the judge sustained defense objections and overruled prosecutive objections. The judge also admonished the prosecutor for failing to show an exhibit to the jury and for continuing to question a witness about an exhibit after stating that there were no more questions about it. Finally, the judge instructed the jury not to assume that he had an opinion on the matters to which his questions related and that it was not to draw any inferences against either party from admonishments the court may have given to the attorneys for conduct violative of evidentiary or procedural rules. Under these circumstances, the record does not support a finding that the district court's conduct deprived Hicks of a fair trial. See Moore v. United States, 598 F.2d 439, 443 (5th Cir.1979) (based on transcript and jury instruction, judge not biased even though he questioned witness more than either party).
 
 
 16
 For these reasons, we affirm Hicks' conviction. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.