[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAR 03 2000
THOMAS K. KAHN
CLERK

_____

No. 97-5261
_____

D. C. Docket No. 96-8020-CR-RYSKAMP

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ALTA THAYER, a.k.a. Adie, a.k.a. Helen,
a.k.a. Vickie, a.k.a. Louis Mitchell, and
ARMAND STORACE, et al.,

Defendants-Appellants.

_____

No. 98-4064
_____

D.C. Docket No. 97-08072-CR-KLR

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ADELAIDE LIPTON,

Defendant-Apellant.

_____

Appeals from the United States District Court
for the Southern District of Florida

———————————————

**(March 3, 2000)**

Before TJOFLAT, Circuit Judge,  RONEY and FAY, Senior Circuit Judges.

PER CURIAM:

Defendants-Appellants, Adelaide Lipton, Armand Storace, Alta Thayer, Dan Lemrond, and Daniel Duliga, were variously charged with and convicted of conspiracy to engage in mail and wire fraud,[1] wire fraud,[2] mail fraud,[3] money laundering conspiracy,[4]  and money laundering.[5]  Each defendant was sentenced to a term of imprisonment and varying amounts of restitution.  All five defendants appeal some aspect of their convictions or the restitution portion of their sentences. We affirm the convictions and the incarceration portion of the sentences; we vacate and remand for reconsideration the restitution amounts.

———————————————

[1] 18 U.S.C. § 371.

[2] 18 U.S.C. §§ 1343 and 2.

[3] 18 U.S.C. §§ 1341 and 2.

[4] 18 U.S.C. § 1956(g).

[5] 18 U.S.C. § 1956(a)(1)(B)(i)and 2.

The defendants were engaged in a telemarketing scheme which purportedly matched vacation time share owners with prospective corporate buyers. Contrary to the promises made by Vacation Clearing House, Inc. ("VCH") no such buyers existed. The scheme was very effective and many innocent victims sent money to VCH in hopes of selling their timeshares. A telemarketer would call the timeshare owner, inquire into their interest in selling their time share, then pass the phone call on to another telemarketer, who would check a fictitious database and inform the victim that VCH had a prospective buyer. The victim would then send VCH a check for $498.00, which the telemarketer promised would be reimbursed at closing. Additionally, VCH would guarantee that the property would be sold in one year or VCH would buy it. Months later, when the deal was not complete, VCH would send apologetic letters explaining the delays. Approximately 1600 people were victims of this scheme. Apparently, there were two instances where vacation time shares were actually sold, but they were not sold to corporate buyers as promised.

The first defendant, Adelaide Lipton, was the owner, director, and president of VCH; she was also the owner, director, and president of Eurofund Group Limited, another fictitious corporation used to perpetrate the fraud. Lipton appeals on eight grounds. We affirm on all issues.

3

First, Lipton claims that the evidence was insufficient to support her conviction. Sufficiency of the evidence is a legal question reviewed de novo. See United States v. Ramsdale, 61 F.3d 825, 828 (11th Cir. 1995). Lipton was the owner and director of the sham companies. She hired the employees, gave them a script, and taught them how to execute the scheme. Lipton also generated and signed the phony delay letters. Clearly, the evidence was sufficient to prove that she was the principal in a conspiracy that engaged in extensive mail and wire fraud.

Furthermore, the evidence was also sufficient to show that Lipton was guilty of money laundering. "A person commits a money laundering offense when he conducts or attempts to conduct a financial transaction with money he knows to be the proceeds of an unlawful activity, with the purpose of concealing or disguising the nature, location, source, ownership or control of the proceeds." See United States v. Flynt, 15 F.3d 1002, 1007 (11th Cir. 1994). Lipton funneled profits from VCH to Eurofund and other fictitious business accounts and then eventually to her personal account. The evidence was plainly sufficient to prove that Lipton intended to conceal the funds that were generated from her fraudulent company that engaged in illegal activities.

4

Lipton's second claim is that the district court erred in admitting evidence that violated her the attorney-client privilege. The prosecution called Lipton's former corporate attorney as a witness with the understanding that no privileged matters would be raised. After reviewing the testimony of the former corporate counsel, we find that no privileged matters were revealed; therefore, no breach of attorney-client privilege occurred.

Lipton's third claim is that the introduction of her grand jury testimony violated her constitutional privilege against self-incrimination. However, when the grand jury testimony was going to be admitted at trial, the district court judge asked Lipton's attorney whether he objected. The attorney replied, "I really don't object." The defendant advocates that because her fundamental guarantee against self-incrimination was violated the court should reverse the conviction. However, based on the fact that the district court affirmatively asked counsel if the admission of the grand jury testimony was acceptable, the defense invited the error and review is precluded. See Johnson v. United States, 318 U.S. 189, 200 (1943); United States v. Davis, 443 F.2d 560, 564-65 (5th Cir. 1971) ("invited error" precludes both invocation of the plain error rule and reversal).

The fourth claim asserted by Lipton is that the district court's construction of a government witness's plea agreement amounted to a judicial comment on the

5

evidence and created an undue restriction of cross-examination. The defendant argues that because the judge instructed the jury on the basic fundamental structure of the plea agreement the defense was unable to use the plea agreement to show bias and impeach the witness. On cross-examination, the defendant had already elicited testimony that the witness thought he received benefits under the plea agreement by testifying against the defendant. When asked by the judge if the defense was finished questioning the witness about the plea agreement, the defense answered affirmatively. It is well established under the Federal Rules of Evidence and our precedent that a judge is not a mere moderator, rather he has an obligation to insure a fair trial. Hanson v. Waller, 888 F.2d 806, 813 (11th Cir. 1989). "He may comment on the evidence, may question witnesses and elicit facts not yet adduced or clarify those presented, and may maintain the pace of the trial by interrupting or cutting off counsel as a matter of discretion." Id. Here, the judge did not preclude any cross-examination, the judge simply clarified the defense created confusion about the plea agreement.

Lipton's fifth claim is that the introduction of her co-defendant's pretrial statements violated the Bruton rule. Bruton held that a defendant is deprived of his rights under the Confrontation Clause when his nontestifying codefendant's confession naming him as a participant in the crime is introduced at their joint trial.

6

<u>Bruton v. United States</u>, 391 U.S. 123 (1968).   The Supreme Court has repeatedly held that "a defendant is deprived of his Sixth Amendment right of confrontation when the facially incriminating confession of a nontestifying codefendant is introduced at their joint trial, even if the jury is instructed to consider the confession only against the codefendant."  <u>See</u> <u>Richardson v. Marsh</u>, 481 U.S. 200, 207 (1987).

The <u>Bruton</u> rule is very narrow and inapplicable to this case.  The co-defendants made no facially incriminating statements against Lipton.  The redacted version of the statements were innocuous. Furthermore, none of the statements by the co-defendants' were "powerfully incriminating" as required by <u>Bruton</u>.  The five statements that the defendant claims are so incriminating are in fact so minuscule that they do not prejudice the defendant.[6]  <u>See</u> <u>Schneble v. Florida</u>, 405 U.S. 427, 430 (1972) ("In some cases the properly admitted evidence of guilt is so overwhelming, and the prejudicial effect of the codefendant's admission is so insignificant by comparison, that it is clear beyond a reasonable doubt that the improper use of the admission was harmless error.").

_____

[6] Lipton claims that  testimony regarding what "management" required was a direct and clear implication of her; however a myriad of testimony illustrates that management included many people.

7

Lipton's sixth claim is that the government breached the written plea agreement by failing to abide by the stipulated terms governing sentencing. According to Lipton, the government breached the plea agreement by failing to request a lower offense level, based in part upon "super acceptance" of responsibility. However, prior to sentencing, the government learned that Lipton had underhandedly transferred assets to her daughter. Further, Lipton failed to object at trial; therefore, she has waived the issue on appeal, unless the deviation can overcome the plain error standard. The plain error standard is very high, requiring that the error affect a substantial right of the defendant. See United States v. Bendek, 146 F.3d 1326, 1328 (11th Cir. 1998). "A court of appeals may correct a plain, forfeited error affecting substantial rights 'only if the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" Id. at 1328, quoting United States v. Olano, 507 U.S. 725, 736 (1993) (quotations omitted). Lipton never argues that the sentence imposed is unfair, rather she argues that she would be released sooner but for the sentence. Viewed in light of the plain error standard, the breach of the plea agreement does not rise to the level of unjustly affecting a substantial right of the defendant. Furthermore, the district court judge possessed discretion to make independent findings and sentence accordingly. Therefore, we affirm the sentence imposed.

8

Lipton's seventh claim is that the district court erroneously denied a downward departure based on a misunderstanding of the diminished capacity guideline. After reviewing the findings of the district court judge, we conclude that the judge did not misunderstand the guidelines, rather the judge concluded that Lipton did not suffer from diminished capacity. Therefore, the district court did not err when it failed to depart from the guidelines.

Finally, Lipton claims that the district court erred in applying the money laundering sentencing guidelines. The district court did not err, rather it correctly followed Eleventh Circuit precedent. This Court has previously held that Congress intended U.S.S.G. § 2S1.1 to criminalize a broad array of money laundering activity, not just drug related offenses. See United States v. Adams, 74 F.3d 1093, 1102 (11th Cir. 1996). In Adams, this Court explored the legislative history and other circuit's applications of U.S.S.G. § 2S1.1 and determined that the statute applied to money laundering outside the "classic" form. Id. Therefore, the district court correctly applied § 2S1.1 in sentencing Lipton.

The next defendant-appellant, Armand Storace, appeals on three grounds. First, Storace challenges the sufficiency of the evidence. Second, he claims that his conviction should be overturned because it was based in part on testimony solicited by the government by the grant of immunity from prosecution or the

promise of a reduced sentence. Finally, Storace appeals the court ordered restitution. We affirm the conviction, but vacate and remand the restitution order.

We review sufficiency of the evidence <u>de</u> <u>novo</u> and in the light most favorable to the government. <u>See</u> <u>United States v. Ramsdale</u>, 61 F.3d 825, 828 (11th Cir. 1995). Furthermore, "[a]ll reasonable inferences and credibility choices are made in favor of the jury verdict." <u>Id.</u> Storace was a "closer" in the VCH scheme; he was instrumental in persuading victims to send their money by following a fraudulent script and making false representations. Moreover, Storace admitted that he had worked for a company similar to VCH, which was closed for engaging in illegal activity and making false representations. Storace used virtually the same script and made the same false representations at both places of employment. Clearly, the evidence was sufficient for the jury to convict Storace.

Storace's second claim is that his conviction should be overturned because it was based in part on testimony obtained through witnesses who had negotiated government plea agreements. This claim is frivolous. Testimony derived through plea agreements is common in trials and does not violate 18 U.S.C. § 201(c)(2), the statute that prohibits bribing witnesses. <u>See</u> <u>United States v. Lowery</u>, 166 F.3d 1119 (11th Cir. 1999).

10

Finally, Storace claims that the sentencing court erred in ordering restitution in an amount that the record shows he is unlikely to be able to pay either at the time of sentencing or in the future. Storace objected, arguing that the record did not reflect his ability to pay $91,397.05 in restitution; therefore, we review for abuse of discretion. See United States v. Siegel, 153 F.3d 1256, 1261 (11th Cir. 1998). The government concedes that the restitution order was not based on the defendant's ability to pay and that we must vacate the restitution order.

The Victim and Witness Protection Act of 1982 (the "VWPA") empowers the district court to award restitution to victims. See 18 U.S.C. § 3663-64. The VWPA provisions for restitution were substantially amended by the Mandatory Victims Restitution Act of 1996 (the "MVRA"), which became effective April 24, 1996.[7] Prior to the 1996 amendment, awarding restitution was discretionary and "the court was required to consider 'the amount of the loss sustained by any victim as a result of the offense, the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependants, and

---

[7] The amended provisions for restitution mandate that the district court order restitution in the full amount of the victim's loss without considering the defendant's financial resources. See 18 U.S.C. § 3664(f)(1)(A) (1998).

such other factors as the court deems appropriate.'" See United States v. Siegel, 153 F.3d 1256, 1260 (11th Cir. 1998), citing 18 U.S.C.A. § 3664(a) (West 1985).

Storace's fraudulent activities took place between October 22, 1993 and March 10, 1994, before the amendments to the VWPA. The amended provisions do not apply to persons whose criminal conduct occurred before April 24, 1996, the effective date of the amendments. See United States v. Siegel, 153 F.3d 1256, 1260 (11th Cir. 1998). Therefore, the sentencing court must consider his ability to pay when setting restitution. The record indicates that Storace may be unable to pay $91,397.05 in restitution. Storace has a negative net worth, a low monthly income, a disabled wife who is unable to work, and a daughter who relies on him for support. Furthermore, the district court even acknowledged that Storace would probably be unable to pay this amount. Accordingly, we vacate the restitution award and remand for the district court to consider Storace's financial resources, financial needs, and earning ability.

Two other defendants also appealed their restitution orders, Alta Thayer and Dan Lemrond. However, neither of these defendants objected to the restitution at sentencing. A court of appeals may only review an issue not raised in the trial court if there is a plain error that would result in injustice. See United States v. Olano, 507 U.S. 725 (1993). Plain error is a very high standard; however, it is

12

satisfied in this case.  The government concedes that the restitution order was not appropriate because the district court did not consider the defendants ability to pay when setting the restitution amount.  In the case of Alta Thayer, the pre-sentence report showed that she had a negative net worth and worked sporadically bringing in a minimal income.  Dan Lemrond also had a negative net worth; he has several large debts, very little cash, and a rented residence in which he lives with his wife and three young children.  Accordingly, we vacate the restitution awards and remand for the district court to consider the financial resources, financial needs, and earning abilities of Thayer and Lemrond.

Defendant Lemrond raised two other issues on appeal.  Lemrond claims that the evidence was not sufficient to show that he had knowledge of the fraud.  We review sufficiency of the evidence de novo.  See United States v. Ramsdale, 61 F.3d 825, 828 (11th Cir. 1995).   Here, the evidence shows that Lemrond was a VCH "closer" and supervisor.  By the nature of his job, he was actively engaging in fraud.  Based on the evidence presented at a trial, a reasonable jury could easily have concluded that Lemrond had knowledge of the fraud.

Lemrond additionally claims that the trial court erred in refusing to grant a two point reduction for his "acceptance of responsibility" at sentencing.  The defense cites several cases for the proposition that going to trial and being

convicted at trial does not per se preclude a defendant from a point reduction for accepting responsibility. See United States v. Castillo-Valencia, 917 F.2d 494 (11th Cir. 1990) ( sentencing judges are in a unique position to evaluate acceptance of responsibility and their determinations are entitled to great deference, but sentencing judges may not refuse to find acceptance of responsibility per se simply because a defendant elected to go to trial); United States v. Rodriguez, 905 F.2d 372 (11th Cir. 1990) (recognizing instances where a defendant went to trial but is eligible for a sentence reduction for acceptance of responsibility). We agree that there is no bright line rule; instead, trial courts have discretion. The district court has discretion to determine whether a point reduction is or is not appropriate. One of the factors a judge may consider is whether the defendant went to trial. Here, the judge correctly exercised his discretion when he chose not to award Lemrond a two point reduction. He presided over the trial, was familiar with the position of the appellant during trial and could evaluate the sincerity of the "acceptance of responsibility."

The fifth defendant, Daniel Duliga, claims that the evidence was insufficient to connect him to the fraud scheme. Duliga was a "closer" for VCH. By virtue of his job he was involved in making multiple fraudulent representations. Again, this

jury could have easily found that the evidence was more than sufficient to conclude he knew of the fraud.  We affirm his conviction.

After a detailed review of the record and the arguments presented, we affirm the convictions and sentences except for the restitution ordered paid by Storace, Thayer and Lemrond.  Those restitution orders are vacated and that issue is remanded to the district court for re-evaluation.

AFFIRMED in part; VACATED in part; and REMANDED.