[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 26, 2007
THOMAS K. KAHN
CLERK

————————————————

No. 05-14781

————————————————

D.C. Docket No. 03-00539-CV-T-31-DAB

DANIEL FERGUSON, as Personal
Representative of the Estate of
James Patrick Ferguson, Deceased,
and Ann Marenette, his mother,
BEVERLEY A. RICHARDSON, as
Personal Representative of the
Estate of Edwin B. Richardson,
Deceased and on the behalf of
Matthew C. Richardson, Children
of Edwin B. Richardson, Deceased,
et al.

                                        Plaintiffs-Appellants,

        versus

BOMBARDIER SERVICES
CORPORATION, BOMBARDIER
SERVICES AMERICA CORPORATION,
et al.,

                                        Defendants-Appellees.

_____

No. 05-16783

_____

D.C. Docket Nos. 03-00539-CV-T-30-MSS
03-00544-CV-T-G

DANIEL FERGUSON, as Personal
Representative of the Estate of
James Patrick Ferguson, Deceased,
and Ann Marenette, his mother,
BEVERLEY A. RICHARDSON, as
Personal Representative of the
Estate of Edwin B. Richardson,
Deceased and on the behalf of
Matthew C. Richardson, Children
of Edwin B. Richardson, Deceased,
et al.

Plaintiffs-Appellants,

versus

BOMBARDIER SERVICES
CORPORATION, BOMBARDIER
SERVICES AMERICA CORPORATION,
et al.,

Defendants-Appellees.

_____

Appeals from the United States District Court for the
Middle District of Florida

_____

**(July 26, 2007)**

Before EDMONDSON, Chief Judge, TJOFLAT and JOHN R. GIBSON,[*] Circuit Judges.

JOHN R. GIBSON, Circuit Judge:

These consolidated actions arise out of the crash of a military aircraft, the Sherpa C-23B+, which crashed while transporting Virginia Air National Guard personnel from Florida to Virginia, killing eighteen passengers and three crew members. Appellants, the personal representatives of the estates of thirteen passengers who were killed, sued Rockwell Collins, Inc., Rockwell International Corporation, Bombardier Services Corporation, and Short Brothers PLC for negligence and strict liability. Following trial, the jury returned a verdict for the defendants. On appeal, the plaintiffs challenge several rulings made by the district court as well as the conduct of the district court during trial. We affirm the judgment of the district court.

I.

The Sherpa C-23B+ crashed near Unadilla, Georgia, on March 3, 2001, approximately one hour into the flight. According to the flight data recorder, seconds before the crash the aircraft experienced strong turbulence, which caused the aircraft initially to pitch upwards several degrees. This was followed by a correction and then a sustained dive resulting in the aircraft's destruction.

_____

*Honorable John R. Gibson, United States Circuit Judge for the Eighth Circuit, sitting by designation.

3

Although the turbulence was a factor in the crash, both parties agreed that it was not the primary cause of the accident.

Short Brothers designed and manufactured the Sherpa C-23B, the predecessor to the B+, but stopped manufacturing planes in the 1990s. At the Army's request and in accordance with Army specifications, Short Brothers designed the B+. The B+ was actually a modified civilian airliner also designed by Short Brothers, the SD3-60, which Bombardier Services refurbished by cutting, reassembling, and remanufacturing into the B+. Rockwell Collins designed and manufactured the APS-65 autopilot system used on the B+. The APS-65 was also used on the C-23B.

The critical issue in the case is the precise cause of the accident. The appellants allege that two design defects and a manufacturing defect, all in the autopilot system, conspired to cause the aircraft to crash following the gust of wind. They contend that the autopilot system went into "torque limiting mode" improperly and that the autopilot should have been equipped with an annunciator in order to warn the pilot when it went into torque limiting mode. They also contend that the autopilot system was improperly installed, leading to a cable jam that prevented the aircraft from recovering once it began its dive. The appellees argue the aircraft was improperly loaded, such that the center of gravity was

4

beyond the limit allowed for the safe operation of the aircraft. According to the cockpit voice recorder, moments before the turbulence one of the pilots left the cockpit and walked to the rear of the aircraft; the appellees contend that the pilot's movement allowed the aircraft to become more unstable, causing the aircraft to crash following the gust of wind.

The Army conducted two official investigations of the crash. The United States Army Safety Center issued a Safety Center Report, which was produced for the purpose of increasing aviation safety and preventing mishaps. The Army redacted all of the findings and recommendations of the investigation board and reviewing officials before releasing the Safety Center Report. The Army also convened a Collateral Investigation Board, which issued its own report. Unlike the Safety Center Report, the CIB report was issued for the purpose of studying the events leading up to the crash, identifying contributing factors, and determining the cause. Under federal law, however, "any opinion of the accident investigators as to the cause of, or the factors contributing to, the accident set forth in the accident investigation report may not be considered as evidence in [a civil] proceeding." 10 U.S.C. § 2254(d).

The appellants never presented evidence of a design defect during trial. Following a <u>Daubert</u>[1] hearing, the district court excluded proposed testimony from engineer John Malley regarding a defect in the autopilot system. Malley was prepared to testify that information in the flight data recorder indicated that the autopilot system was not safely integrated into the B+. On cross-examination, however, Malley admitted that the data supporting his testimony was equally consistent with the appellant's theory that the aircraft was improperly loaded and operating beyond its center of gravity limits. In other words, Malley admitted that if the plane was too heavy, this would have also produced the oscillations in the flight data recorder that Malley thought were indicative of a defect in the autopilot system.

The district court also excluded proposed testimony from Wayne Smith, who planned to testify that the autopilot system should have been equipped with an annunciator. The basis of his opinion was that an annunciator for the autopilot system was required by Federal Aviation Regulations. The district court, however, ruled that the appellants never provided evidence that any such regulation exists.

---

[1]<u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993).

Following the close of appellants' case-in-chief, Rockwell filed a motion under Fed. R. Civ. P. 50 for judgment as a matter of law, which the district court granted. The district court concluded that the appellants submitted no evidence that Rockwell shipped a defective autopilot system to Short Brothers. The district court reserved ruling on the motions as to Short Brothers and Bombardier. Trial commenced on July 13, 2005. On August 2, 2005, the jury returned a verdict for Bombardier on the negligence claim and a verdict for Short Brothers on the manufacturing defect claim. The district court denied appellants' motion for a new trial on November 16, 2005, and they now bring this appeal.

## II. Evidentiary Rulings

Appellants appeal several evidentiary rulings made by the district court. We generally review the district court's evidentiary rulings for abuse of discretion. United States v. Cunningham, 194 F.3d 1186, 1193 (11th Cir. 1999). This standard of review requires that we defer to the district court's ruling unless that ruling is manifestly erroneous. Gen. Elec. Co. v. Joiner, 522 U.S. 136, 142 (1997). "An abuse of discretion can occur where the district court applies the wrong law, follows the wrong procedure, bases its decision on clearly erroneous facts, or commits a clear error in judgment." United States v. Brown, 415 F.3d 1257, 1266 (11th Cir. 2005).

7

Appellants argue that the district court erred in excluding testimony from expert witnesses Malley and Smith. Under Federal Rule of Evidence 702, district courts must act as "gatekeepers," admitting expert testimony only if it is reliable and relevant. See Daubert, 509 U.S. at 589. In determining whether to admit expert testimony, the district court should consider whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

City of Tuscaloosa v. Harcros Chemicals, Inc., 158 F.3d 548, 562 (11th Cir. 1998) (footnote omitted). The party offering the expert bears the burden of satisfying each element by a preponderance of the evidence. See Allison v. McGhan Med. Corp., 184 F.3d 1300, 1306 (11th Cir. 1999).

In this case, the district court excluded Malley's testimony because it was predicated on the assumption that the aircraft was properly loaded. The district court concluded that such an assumption was belied by the evidence. Assuming that the district court was correct in concluding that the evidence established that the aircraft was most likely overweight, Malley's testimony was properly

excluded. By his own admission, Malley's evidence concerning oscillations in the flight data recorder was entirely consistent with an improperly loaded aircraft. His proposed testimony, therefore, would do nothing to assist the trier of fact in understanding the evidence or determining a fact in issue and would be properly excluded under Fed. R. Evid. 702. As the district court recognized, the key question was whether the aircraft was properly loaded. If it was not, Malley's testimony does nothing to establish whether there was a defect in the autopilot system.

Reviewing the record, there is no basis for determining that the district court's conclusion regarding the aircraft's weight was clearly erroneous. Appellants point to testimony from other witnesses that they argue contradicts the findings of the CIB report. Even assuming, arguendo, that the testimony relied upon by appellants provides conflicting evidence, we are unable to conclude that the district court was clearly erroneous in determining that the aircraft was overweight. The district court therefore did not abuse its discretion in excluding Malley's expert testimony.

Appellants also argue that the district court erred in excluding Smith's proposed expert testimony. Smith wished to testify that Federal Aviation Regulations required the autopilot system on the B+ to be equipped with a

warning annunciator. The district court ruled the testimony would not be admitted because the regulations relied upon by Smith did not support his claim. We agree with the district court that the regulations cited by Smith do not support a claim that the autopilot system should have been equipped with a warning annunciator. The regulations do not specifically require an annunciator, and Smith's contention that the circumstances of the crash nonetheless indicate that an annunciator should have been installed is unpersuasive. The district court's decision was not an abuse of discretion and we affirm the district court's decision to exclude testimony from Malley and Smith.[2]

Next, appellants contend that the district court erred in excluding a memorandum issued by Major General Ronald Harrison in response to the Collateral Investigation Board report and the Army Safety Center Report. Appellants argue that both documents are admissible hearsay under the government report exception in Fed. R. Evid. 803(8). Rule 803(8)(C) allows as an exception to the hearsay rule the admission of "Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth . . . in

[2]Appellees argue that we should review the district court's decision for plain error because of the appellants' failure to proffer Smith's testimony at trial. Upon review of the record, however, we conclude that there is an adequate basis for review and the abuse of discretion standard should apply.

civil actions and proceedings . . . factual findings resulting from an investigation made pursuant to authority granted by law." Fed. R. Evid. 803(8)(C).

First, the district court was within its discretion when it excluded the memorandum from Major General Harrison. His comments do not form a part of the CIB report and therefore fall outside the scope of Rule 803(8)(C). Cf. City of New York v. Pullman Inc., 662 F.2d 910, 915 (2d Cir. 1981) (holding that interim staff report of the Urban Mass Transit Administration, which was ultimately rejected by the UMTA administrator, "did not embody the findings of an agency"). Also, as the district court noted, Major General Harrison's comments constitute his own conclusion regarding the cause of the crash and therefore would have been inadmissible under 10 U.S.C. § 2254(d).[3]

Second, the district court committed no error in excluding the Army Safety Center Report. The portion of the Report that appellants contend should have been admitted, the conclusion regarding the aircraft's weight and center of gravity, offers no indication of how the Army Safety Center arrived at its calculation. Because the Report was issued for aviation safety and not for the purposes of

---

[3]Appellants also claim that the opening statement by Bombardier's counsel violated 10 U.S.C. § 2254(d), and the district court erred by failing to give the jury instruction proposed by appellants. Reviewing the record, we conclude that the opening statement was not improper. Bombardier's counsel made it clear that the defense would rely upon the CIB report for factual findings and that expert testimony would establish the cause of the crash. The district court therefore did not err in refusing to give appellants' desired jury instruction.

11

litigation, extensive portions were redacted, limiting its usefulness and reliability. Given the lack of any indicia of reliability regarding the report's estimation of the weight of the aircraft or what role the weight may have played in the crash, the district court did not abuse its discretion in excluding the report.

Finally, appellants argue that the district court erred by permitting expert witness Morin to submit expert reports after the discovery deadline. We conclude that the district court's decision did not constitute an abuse of discretion. Morin filed his final expert report on November 18, 2004, approximately eight months before the start of trial. This gave appellants ample time to prepare for Morin's testimony and they suffered no prejudice from the district court's decision.

### III. Other Claims

Appellants argue that the district court's conduct during trial resulted in unfair prejudice to their case. They contend that the district court questioned their witnesses excessively and made unfair comments on their case. Because there was no objection at trial, we review the conduct of the district court for plain error. See Hanson v. Waller, 888 F.2d 806, 813 (11th Cir. 1989).

It is well within the authority of judges to question witnesses. Fed. R. Evid. 614, advisory committee's notes. That authority, though, is "abused when the judge abandons his proper role and assumes that of advocate." Id. The record

shows that the district court questioned witnesses on both sides of the case without assuming the role of an advocate. Appellants do not refer to any specific questions as especially unfair or prejudicial, but instead contest the fact that the district court questioned their witnesses on numerous occasions. The case, however, involved several expert witnesses and complex questions of fact, and it was therefore "entirely proper for the trial court to make inquiries of a witness in order to clarify the evidence presented." Hanson, 888 F.2d at 813.

Comments made by the district court will cause reversal only when those comments "excite a prejudice which would preclude a fair and dispassionate consideration of the evidence." Brough v. Imperial Sterling Ltd., 297 F.3d 1172, 1181 (11th Cir. 2002) (internal quotation marks omitted). In determining whether the district court's comments are prejudicial, we "must consider the record as a whole and not merely isolated remarks." Id. at 1181. In this case, nearly all of the comments made by the district court were entirely innocuous and caused no prejudice to the appellants. At one point, the district court did predict that "the defense lawyers are going to eat [the appellants' expert] up on that" issue. We conclude, however, that a single comment made by the district court predicting whether an expert would be successful could not have precluded the jury from a dispassionate consideration of the evidence. The judge made clear in his charge at

the end of trial that it was the jury's responsibility to determine all of the facts solely on the basis of the evidence presented. We conclude that the district court's questions and comments do not constitute plain error.

Appellants next argue that the district court erred in granting summary judgment for Rockwell Collins. We review de novo the district court's grant of judgment as a matter of law, applying the same standard as the district court. Pickett v. Tyson Fresh Meats, Inc., 420 F.3d 1272, 1278 (11th Cir. 2005). Judgment as a matter of law is appropriate if, "viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact which requires a jury determination of the merits." ITPE Pension Fund v. Hall, 334 F.3d 1011, 1013 (11th Cir. 2003).

Appellants contend that on the basis of the evidence submitted, Rockwell Collins could have been found liable for an improperly assembled autopilot system. Specifically, appellants argue that the autopilot system's servo mount utilized an improper clip and washer configuration. Rockwell Collins, however, did not install the autopilot system used on the B+. Appellants therefore theorize that Rockwell Collins could have shipped an improperly assembled clip and washer to Short Brothers and Short Brothers could have installed the autopilot system using the same configuration as Rockwell Collins. According to the

14

appellants' argument, this would make Rockwell Collins liable despite instructions from Rockwell Collins concerning the proper assembly of the servo mount.

Since Short Brothers assembled the autopilot system on the B+, they alone would be liable for a manufacturing defect. Assuming, <u>arguendo</u>, that appellants' theory is true, it still does not result in liability for Rockwell Collins and the district court did not err in granting summary judgment.

Finally, appellants argue that the district court violated the due process rights of the twelve families who did not participate in the trial. These actions, however, were properly consolidated and the parties suffered no prejudice. Appellants' argument is wholly without merit.

IV.

For the foregoing reasons, we affirm the district court in all respects.

AFFIRMED.