[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 01-10683

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
August 8, 2002
THOMAS K. KAHN
CLERK

D. C. Docket No. 99-00689 CR-ASG

UNITED STATES OF AMERICA,

Plaintiff-Appellee,
Cross-Appellant,

versus

GUILLERMO A. SCHLAEN,
MAURICIO S. SCHLAEN,

Defendants-Appellants,
Cross-Appellees.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

**(August 8, 2002)**

Before EDMONDSON, Chief Judge, BLACK and COX, Circuit Judges.

COX, Circuit Judge:

Guillermo A. and Mauricio S. Schlaen were charged with one count of conspiracy to commit money laundering, multiple counts of money laundering, and multiple counts of failing to file Form 8300 with the Internal Revenue Service ("IRS") for transactions involving the receipt of over $10,000 in cash. The jury acquitted them of the conspiracy count and the failure-to-file counts but convicted them on most of the money-laundering counts. The district court, after departing downward under §5K2.0 of the Sentencing Guidelines, sentenced Guillermo to fourteen months in prison and Mauricio to six months in prison. Guillermo and Mauricio appeal their convictions. Guillermo argues, among other things, that his acquittal on the failure-to-file counts requires an acquittal on the money-laundering counts. The Government cross-appeals the district court's downward departure. We affirm the convictions but vacate the sentences and remand for resentencing.

## I. BACKGROUND

### A. THE SCHEME

Guillermo founded a company called AG-USA Corp in 1996, and his brother, Mauricio, became a partner in the business soon thereafter. In the beginning, the Schlaens sold computer parts, but they eventually graduated to assembling and exporting computers.

A business acquaintance of the Schlaens, Carlos Bruyn, was a sales representative for SED International, a publicly-traded company that exports computer parts to Latin America. In early 1998, Bruyn received a call from Sergio Ramirez and Tony Piazza, representatives of a company called OmegaTek. Ramirez and Piazza told Bruyn that they wished to buy merchandise with over $10,000 cash but did not want the transaction reported on IRS Form 8300, as required by law. Bruyn told Ramirez and Piazza that SED had a policy of filing Form 8300 but that he would put them in touch with other potential partners.

Bruyn called Guillermo and told him about OmegaTek's request. Guillermo asked Bruyn a couple of questions about the request and then asked Bruyn to contact OmegaTek on his behalf.

On March 3, 1998, Mauricio was contacted by Anna Maria, a representative of OmegaTek. She told Mauricio that she had a potential order for over $10,000 worth of merchandise for which she would like to pay with cash. She asked Mauricio if he could help her by not filing Form 8300. Mauricio said that he understood her request, and, a few days later, Ramirez called to place the order. Ramirez told Mauricio that he would pay $12,000 in cash for the order, and Mauricio told Ramirez that he would not file Form 8300.

Ramirez and Piazza visited AG-USA's office on March 27, 1998. They brought $6,031 in cash and told Mauricio that their buyers were drug traffickers who dealt primarily in cash. Mauricio told Ramirez and Piazza that he once worked for a company that sold expensive housewares and that he, on one occasion, laundered money by selling thousands of dollars of housewares to a Colombian couple who paid in bundles of cash. Piazza again asked if Mauricio would file Form 8300 to report this cash transaction, and Mauricio said he would not. In fact, said Mauricio, he would be willing not to report a cash transaction of up to $500,000.

On August 28, 1998, Guillermo received $18,952 in cash from OmegaTek and agreed to purchase $18,400 worth of computers from SED International on OmegaTek's behalf.[1] While giving Guillermo the cash, Ramirez emphasized that the cash came from the Colombian mafia and that the transaction could not be reported on a Form 8300. Guillermo assured Ramirez that it would not be reported. To avoid reporting the transaction, Bruyn, on SED's behalf, split the purchase between two invoices. One invoice was for $9,936, and the other was for $8,464. AG-USA paid one invoice in cash; credit was extended on the other invoice. Because of the split invoices, SED was not required to file Form 8300.

---

[1]The $552 difference was compensation for the risk associated with not filing Form 8300.

4

Guillermo received $36,364 in cash from OmegaTek on November 9, 1998, to pay for two orders. When he gave Guillermo the cash, Ramirez again explained that the cash came from the Colombian mafia and that the products he purchased would be sent to Colombia and sold for Colombian pesos. Despite this explanation, Guillermo and Mauricio engaged in six more transactions with OmegaTek and continued to ask for more business. They never filed Form 8300 with the IRS.

The Schlaens did not know that, while it appeared to be a functioning business, OmegaTek was actually a Government sting operation, intended to ferret out potential money launderers in the United States. The Colombian mafia receives a great deal of cash from its drug trafficking operations in the United States. These dollars are sent to purchasing agents in the United States, who use them to purchase goods, which are then exported to Colombia and sold for Colombian pesos. OmegaTek posed as a purchasing agent. "Sergio Ramirez" was actually Sergio Ramil, an undercover agent for the IRS; "Tony Piazza" and "Anna Maria" were confidential informants. OmegaTek's offices were outfitted with video cameras and audio-recording devices, used to gather evidence on money launderers.

## B. THE PROCEEDINGS

Based on the evidence gathered at OmegaTek's offices, Guillermo, Mauricio, and Bruyn were arrested and indicted in the Southern District of Florida. Count One

of the indictment charged them with conspiracy to commit money laundering, in violation of 18 U.S.C. §§ 1956(a)(3)(C) and 1956(h). Count Two charged only Mauricio with money laundering, in violation of 18 U.S.C. § 1956(a)(3)(C). Counts Three through Ten charged Guillermo and Mauricio with money laundering, in violation of 18 U.S.C. § 1956(a)(3)(C). Counts Eleven through Eighteen charged Guillermo and Mauricio with causing their company not to file IRS Form 8300, in violation of 26 U.S.C. §§ 6050I(f)(1)(A) and (C). The indictment against Bruyn was dismissed when he pleaded guilty in a related case. Guillermo and Mauricio proceeded to trial.

The jury found Guillermo guilty on all of his money laundering counts, Counts Three through Ten. The jury found Mauricio guilty on only six of his money laundering counts, Counts Five through Ten. The jury acquitted Guillermo and Mauricio on the conspiracy count and on all of the failure-to-file counts.

At sentencing, the district court calculated Guillermo and Mauricio's sentences pursuant to §2S1.1, the prescribed guideline for violations of 18 U.S.C. § 1956. The total offense level, after appropriate adjustments, was twenty-one for Guillermo and twenty for Mauricio. These levels yielded a sentencing range of thirty-seven to forty-six months for Guillermo and thirty-three to forty-one months for Mauricio.

The district court, after a series of hearings, found that Guillermo and Mauricio's money laundering was incidental to their avoidance of the Form 8300 filing requirement. The incidentalness of their money laundering, according to the district court, placed their conduct outside the heartland of cases contemplated in the Guidelines. The district court therefore recalculated their sentences, adjusting Guillermo's total offense level to thirteen, resulting in a sentencing range of twelve to eighteen months, and adjusting Mauricio's total offense level to twelve, resulting in a sentencing range of ten to sixteen months. The district court then sentenced Guillermo to concurrent sentences of fourteen months in prison and three years of supervised release on each count. It sentenced Mauricio to concurrent sentences of six months in prison, six months of house arrest, and three years of supervised release on each count.

Guillermo and Mauricio appeal their convictions, and the Government cross-appeals the downward departure.

## II. ISSUES ON APPEAL

On appeal, Guillermo and Mauricio both argue that: (1) the evidence was insufficient to support their money laundering convictions; and (2) the district court erred by giving Eleventh Circuit Criminal Pattern Jury Instruction 12.2 on entrapment rather than Pattern Jury Instruction 12.1. Mauricio also contends that the Government

failed to make a sufficient showing of a predisposition to commit money laundering, thus requiring a finding of entrapment as a matter of law. These three arguments are meritless, and we reject them without discussion. *See* 11th Cir. R. 36-1.

Guillermo also raises the following issue: Whether the district court should have dismissed his money-laundering convictions because he was acquitted of the failure-to-file charges, which, he contends, are lesser-included offenses of money laundering. The Government, on cross-appeal, questions the legality of the district court's downward departure. We address each of these issues in turn.

## III. STANDARDS OF REVIEW

Since Guillermo did not raise the lesser-included-offense issue in district court, we review it for plain error. *United States v. Thayer*, 204 F.3d 1352, 1358 (11th Cir. 2000). We review the district court's downward departure for an abuse of discretion. *United States v. Pickering*, 178 F.3d 1168, 1171 (11th Cir. 1999).

## IV. DISCUSSION

### A. GUILLERMO'S CONVICTION

Guillermo was convicted of money laundering in violation of 18 U.S.C. § 1956(a)(3)(C), which requires the Government to prove the following: (1) that the defendant conducted or attempted to conduct a financial transaction, (2) with the intent to avoid a transaction reporting requirement, and (3) that the property involved

in the transaction was represented by a law enforcement officer to be the proceeds of narcotics trafficking. 18 U.S.C. § 1956(a)(3)(C), (c)(7)(B)(i) (2000); *United States v. Nelson*, 66 F.3d 1036, 1040 (9th Cir. 1995); *United States v. Breque*, 964 F.2d 381, 386-87 (5th Cir. 1992). On the other hand, Guillermo was acquitted of failing to file Form 8300 in violation of 26 U.S.C. §§ 6050I(f)(1)(A) and (C). Guillermo argues that, because intent to avoid a reporting requirement is an element of money laundering, and because failing to file Form 8300 is a means of avoiding a reporting requirement, then failing to file is a lesser-included offense of money laundering. Therefore, according to Guillermo, his acquittal on the lesser-included counts should preclude his conviction on the money-laundering counts.

The lesser-included-offense inquiry typically arises in the double-jeopardy context. *See, e.g., United States v. Diaz*, 190 F.3d 1247, 1262 (11th Cir. 1999). However, the Double Jeopardy Clause, U.S. Const. amend. V, protects defendants against *successive* prosecutions, not *simultaneous* ones, *United States v. Farmer*, 923 F.2d 1557, 1563 (11th Cir. 1991), and therefore does not apply to this case. The lesser-included-offense inquiry is also triggered when a defendant requests a lesser-included-offense instruction under Rule 31(c) of the Federal Rules of Criminal procedure. Fed. R. Crim. P. 31(c); *see, e.g., Schmuck v. United States*, 489 U.S. 705, 109 S. Ct. 1443 (1989). Guillermo requested no such instruction in this case. Instead,

Guillermo asserts that the verdicts are inconsistent and asks us to make the verdicts consistent by acquitting him on the money-laundering charges.

It is well-settled in federal criminal law that "[c]onsistency in the verdict is not necessary." *Dunn v. United States*, 284 U.S. 390, 393, 52 S. Ct. 189, 190 (1932); *United States v. Powell*, 469 U.S. 57, 62, 105 S. Ct. 471, 475 (1984). Even where conviction on one count and acquittal on another count is a logical impossibility, the conviction will stand, unless it was otherwise obtained in error. *United States v. Mitchell*, 146 F.3d 1338, 1342-45 (11th Cir. 1998). Therefore, even if a violation of 26 U.S.C. §§ 6050I(f)(1)(A) or (C) is a lesser-included offense of a violation of 18 U.S.C. § 1956(a)(3)(C), a question that we need not decide, Guillermo's money-laundering convictions must stand, despite his acquittal on other counts.

## B. THE SENTENCES

The district court granted a downward departure of six levels to Guillermo and Mauricio under §5K2.0 of the Sentencing Guidelines. It found that Guillermo and Mauricio's money laundering was incidental to their avoidance of the transaction reporting requirements and, thus, outside of the heartland of §2S1.1, the prescribed guideline for money laundering. By departing six levels, the district court put Guillermo and Mauricio in the sentencing range in which they would have been had they been convicted for failure to file rather than money laundering. The Government

10

objected to this downward departure and, on appeal, argues that the downward departure was an abuse of discretion.

A court may grant a downward departure under §5K2.0 when "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." 18 U.S.C. § 3553(b); United States Sentencing Commission, *Guidelines Manual*, §5K2.0 (Nov. 1998); *United States v. Smith*, 289 F.3d 696, 710 (11th Cir. 2002). In determining whether to grant such a departure, the district court considers two questions: (1) whether any circumstance makes the case atypical, meaning that it takes the case out of the "heartland" of cases involving the conduct described in the applicable guideline; and (2) whether that circumstance should result in a different sentence. *United States v. Regueiro*, 240 F.3d 1321, 1324 (11th Cir. 2001).

When reviewing the district court's grant of a departure, we engage in a three-step process. *United States v. Hoffer*, 129 F.3d 1196, 1201 (11th Cir. 1997); *see also Koon v. United States*, 518 U.S. 81, 98-100, 116 S. Ct. 2035, 2047 (1996). First, we deferentially review the district court's determination that the case falls outside of the heartland. Second, we determine whether the district court relied on appropriate circumstances in granting the departure. Finally, we review whether the circumstances are present to such an extraordinary degree as to warrant a departure.

11

In this case, the district court determined that Guillermo and Mauricio's money laundering was incidental to their failure to file Form 8300 and, thus, fell outside of the heartland of §2S1.1. The district court relied on five circumstances in making this determination: (1) that the defendants did not find out that the cash was derived from drug trafficking until after they made the first transaction; (2) that the defendants did not know how much of the money was derived from drug trafficking; (3) that the defendants were lured into the operation before they knew that the cash was derived from drug trafficking; (4) that the defendants did not use the proceeds to further criminal acts; and (5) that the defendants kept internal records regarding the cash transactions. (R.14 at 26-27.)

The first three circumstances cited by the district court conflict with the jury's verdict. In articulating each of these circumstances, the district court indicated its belief that the defendants were unaware that the money they were laundering was derived from drug trafficking. Guillermo and Mauricio were charged and convicted of engaging in financial transactions involving money that was represented to be the proceeds of narcotics trafficking. As stated above, one of the elements of this crime is that the property involved in the transaction was represented by a law enforcement officer to be the proceeds of narcotics trafficking. 18 U.S.C. § 1956(a)(3)(C), (c)(7)(B)(i) (2000); *United States v. Nelson*, 66 F.3d 1036, 1040 (9th Cir. 1995);

*United States v. Breque*, 964 F.2d 381, 386-87 (5th Cir. 1992). If the court has doubts regarding whether this element was proven, it may consider granting a new trial or entering a judgment of acquittal. "But a district court cannot use the post-trial sentencing process to call a jury's verdict into question." *United States v. Costales*, 5 F.3d 480, 488 (11th Cir. 1993). Therefore, the district court improperly relied on the first three circumstances in granting a downward departure.

The district court also stated that its departure was partly based on a fourth circumstance, the fact that the money laundering was not used to further criminal acts. While the absence of an intent to further other criminal acts is not mentioned as a basis for departure, the presence of such an intent, or what the Guidelines call "criminal purpose," is mentioned as a basis for upward departure. USSG §5K2.9. The inclusion of criminal purpose as a circumstance warranting upward departure indicates that the Sentencing Commission adequately considered the effect that a criminal purpose had on a defendant's culpability. In doing so, it concluded that, while the presence of a criminal purpose might warrant an upward departure, the absence of a criminal purpose does not warrant a downward departure. *United States v. Godfrey*, 22 F.3d 1048, 1056 (11th Cir. 1994). The district court, then, could not use this circumstance to justify a downward departure.

The only remaining circumstance is the fifth one, that the defendants kept internal records of their transactions. The Government argues that this finding is clearly erroneous, but we do not agree. During the course of their dealings with OmegaTek, the defendants indicated that they would keep some sort of internal record of the transactions, though the records differed somewhat from their usual records. This evidence supports the district court's finding. Nevertheless, we do not believe that this difference justifies a downward departure.

Section 2S1.1 does not indicate how the presence of a paper trail should affect a defendant's sentence. However, the district court believed that the paper trail was "inconsistent with planned concealment" (R.14 at 26) and made these defendants less culpable. When a circumstance is unmentioned in a guideline, the district court must consider "the 'structure and theory of both the relevant individual guidelines and the Guidelines taken as a whole'" in deciding whether to grant a downward departure. *Koon*, 518 U.S. at 96, 116 S. Ct. at 2045 (quoting *United States v. Rivera*, 994 F.2d 942, 949 (1st. Cir. 1993)).

A review of the Guidelines indicates that the Sentencing Commission was not unaware that efforts to conceal a crime could alter the sentencing equation. For instance, the commentary to §2T1.1, the guideline for tax evasion, states that "unusually sophisticated efforts to conceal the offense decrease the likelihood of

14

detection and therefore warrant an additional sanction for deterrence purposes."
USSG §2T1.1, comment. (backg'd.) In furtherance of this goal, §2T1.1(b)(2)
provides a two-level enhancement for sophisticated concealment. As in the criminal
purpose context, this enhancement indicates that a defendant who uses sophisticated
means receives additional punishment. But a defendant who uses unsophisticated
means is not rewarded for his use of unsophisticated means; rather, he avoids the
enhancement.

While §2S1.1 did not distinguish between sophisticated and unsophisticated
means when Guillermo and Mauricio were sentenced,[2] the §2T1.1 example indicates
that it is the use of sophisticated means, not the use of unsophisticated means, that
warrants unusual treatment. Therefore, the district court was not justified in granting
a downward departure because the Schlaens used unsophisticated means.

Because it relied on improper circumstances in granting the downward
departures, the district court abused it discretion. *See Koon*, 518 U.S. at 100, 116 S.
Ct. at 2047.

---

[2]The money-laundering guideline now provides for a two-level enhancement
if sophisticated means were used. United States Sentencing Commission,
*Guidelines Manual*, §2S1.1(b)(3) (Nov. 2001).

15

## V. CONCLUSION

We affirm the convictions of Guillermo and Mauricio Schlaen.  But, because the district court did not articulate mitigating circumstances that would warrant a downward departure, we vacate the district court's downward departures and remand for resentencing.

AFFIRMED IN PART; VACATED AND REMANDED IN PART.