[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-12232

_____

D.C. Docket No. 6:10-cr-00007-BAE-GRS-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

GABRIEL FLOREZ,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Georgia

_____

(April 9, 2013)

Before TJOFLAT and BLACK, Circuit Judges, and MOLLOY,* District Judge.

PER CURIAM:

_____

*Honorable Donald W. Molloy, United States District Judge for the District of Montana,
sitting by designation.

Gabriel Florez (Gabriel) appeals his convictions and total sentence for one count of conspiracy to possess with intent to distribute 5 kilograms or more of cocaine and 100 kilograms or more of marijuana, in violation of 21 U.S.C. § 846; and two counts of money laundering, in violation of 18 U.S.C. § 1956(a)(3). Gabriel presents nine issues on appeal, both directly and by adopting relevant portions of his codefendant Raymond Florez's[1] brief, which are addressed below. After review, we affirm Gabriel's convictions and sentence.

## I.

Gabriel contends the Government used impermissible hearsay to prove he conspired to possess with intent to distribute cocaine and marijuana. He specifically challenges the testimony of DEA Special Robert Livingston, asserting Livingston's testimony regarding the following was hearsay: (1) what others involved in the drug trade had told him about Gabriel; (2) telephone and bank records connecting Gabriel to a drug courier who was arrested in Texas; and (3) the facts surrounding investigations into the arrests of drug couriers in Texas and Ohio. Gabriel contends despite the district court's determination the testimony was to provide background and show the course of law enforcement's

---

[1] His stepfather, Raymond Florez (Raymond), was also charged in the indictment on the conspiracy count and was tried jointly with Gabriel

2

investigation into him, it was used for the truth of the matter asserted, as demonstrated by the Government's reliance on the evidence of the investigations into the drug couriers and Gabriel's connection to them in its closing argument as substantive evidence of Gabriel's guilt. He asserts that the hearsay was testimonial and violated his right to confront witnesses.

Ordinarily, we review evidentiary rulings for an abuse of discretion and review *de novo* the question of whether hearsay statements are testimonial for purposes of the Confrontation Clause. *United States v. Caraballo*, 595 F.3d 1214, 1226 (11th Cir. 2010). However, where a defendant fails to preserve an evidentiary ruling by contemporaneously objecting, we review for plain error only. *United States v. Turner*, 474 F.3d 1265, 1275 (11th Cir. 2007); *see United States v. Jiminez*, 564 F.3d 1280, 1286 (11th Cir. 2009) (reviewing Confrontation Clause challenge for plain error). "To demonstrate plain error, the defendant must show that there is (1) error, (2) that is plain and (3) that affects substantial rights." *Turner*, 474 F.3d at 1276 (quotations omitted). If all three conditions are met, we may then exercise our "discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (quotations omitted). "Errors . . . affect a substantial right of a

3

party if they have a substantial influence on the outcome of a case or leave grave doubt as to whether they affected the outcome of a case." *Id.* (quotations omitted).

## A.  Statements by others in the drug trade

We have long recognized that:

statements by out of court witnesses to law enforcement officials may be admitted as non-hearsay if they are relevant to explain the course of the officials' subsequent investigative actions, and the probative value of the evidence's non-hearsay purpose is not substantially outweighed by the danger of unfair prejudice caused by the impermissible hearsay use of the statement.

*Jiminez*, 564 F.3d at 1288 (quotations and alteration omitted).  The Confrontation Clause of the Sixth Amendment prohibits the admission of certain forms of hearsay, specifically testimonial, out-of-court statements, unless the declarant is unavailable and the defendant had a previous opportunity to cross-examine the declarant.  *Id.* at 1286 (citing *Crawford v. Washington*, 541 U.S. 36, 51-52 (2004)).  Hearsay "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." *Id.* at 1287 (quoting Fed. R. Evid. 801(c)).  Hearsay is considered testimonial if it is "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *United States v. Baker*, 432 F.3d 1189, 1203 (11th Cir. 2005)

4

(quotations omitted).  The Confrontation Clause does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted.  *Jiminez*, 564 F.3d at 1287.

No error, plain or otherwise,[2] occurred with respect to Livingston's testimony as to what others involved in the drug trade told him regarding Gabriel. These statements were not admitted for the truth of the matter asserted, but were to show the course of subsequent investigative action.  Thus, the Confrontation Clause was not implicated.  *See id.*  Further, Mark Terrell, Hugh McCullough, and others involved in the McCullough drug conspiracy testified later during the trial regarding their statements about the Florezes to law enforcement, and thus, there was minimal unfair prejudice to Gabriel by any impermissible hearsay use of the statements.

## B.  Telephone and bank records

Generally, business records are "by their nature [] not testimonial" hearsay. *Crawford*, 541 U.S. at 56.  We have held documents which are routinely recorded for a purpose other than preparation for a criminal trial are non-testimonial for purposes of the Sixth Amendment.  *See Caraballo*, 595 F.3d at 1228-29 (holding

---

[2]  Although Raymond's counsel objected twice on hearsay grounds during Livingston's testimony regarding what individuals involved in drug activity said about the Florezes, Gabriel did not adopt those objections.

an immigration form, used for "routine, objective cataloging of unambiguous biographical matters," was not testimonial because it was primarily used to track the entry of aliens into the United States, and it was "of little moment that an incidental or secondary use of the interviews underlying the [] forms actually furthered a prosecution").

Because no objection was made to this testimony, the record is unclear as to why the court initially admitted the telephone and bank records testimony. *See Jiminez*, 564 F.3d at 1288-89 (stating we will uphold the admission of testimony if it is admissible on other, non-stated grounds apparent from the record). However, the prosecutor did later rely on this evidence in his closing arguments as substantive evidence of Gabriel's guilt, for the truth of the matter asserted, and the records were never introduced at trial. The records would have been admissible as an exception against hearsay under Federal Rule of Evidence 803(6)(B), but there is no hearsay exception for testimony about records not in evidence. Thus, it appears that an error that was plain occurred with respect to the admission of the challenged portions of Livingston's testimony. However, based on the evidence supporting his conviction as detailed in Issue II below, the admission of this evidence did not affect Gabriel's substantial rights. *See Turner*, 474 F.3d at 1276. Further, because telephone and business records are recorded for a purpose other

6

than a criminal trial and are not testimonial, Livingston's testimony regarding the contents of the records does not violate the Confrontation Clause. *See Caraballo*, 595 F.3d at 1228-29.

C. *Facts surrounding arrests of drug couriers in Texas and Ohio*

Gabriel did not object to this testimony, and thus it is reviewed for plain error. Similar to the telephone and bank records, Livingston's testimony as to what law enforcement had told him regarding investigations into drug couriers was used for the truth of the matter asserted in the Government's closing. Further, the Confrontation Clause may have been violated by Livingston's testimony regarding what law enforcement told him about their investigation into the Texas and Ohio incidents because an objective witness would have reasonably considered the statements to be available at a later trial. *See Baker*, 432 F.3d at 1203. Assuming, *arguendo*, the statements Livingston testified to were testimonial, any error that occurred in admitting the evidence did not affect Gabriel's substantial rights in light of the other evidence properly admitted at trial supporting his conspiracy conviction. *See Turner*, 474 F.3d at 1276.

II.

Gabriel asserts the Government provided insufficient evidence to show he aided and abetted other persons involved in a conspiracy to possess cocaine and

marijuana with intent to distribute.  He contends the Government failed to show he committed an act which contributed to or furthered the conspiracy, and instead only presented inaudible audio tape evidence and the uncorroborated testimony of the Government's witnesses at trial to prove his guilt.

We review both a challenge to the sufficiency of the evidence and the denial of a Federal Rule of Criminal Procedure 29 motion for judgment of acquittal *de novo*.  *United States v. Gamory*, 635 F.3d 480, 497 (11th Cir.), *cert. denied*, 132 S. Ct. 826 (2011).  In considering the sufficiency of the evidence, we view the evidence in the light most favorable to the government, with all inferences and credibility choices made in the government's favor, and affirm the conviction if, based on this evidence, a reasonable jury could have found the defendant guilty beyond a reasonable doubt.  *Id.*

To sustain a conviction for conspiracy to distribute drugs, the government must prove that "1) an agreement existed between two or more people to distribute the drugs; 2) that the defendant at issue knew of the conspiratorial goal; and 3) that he knowingly joined or participated in the illegal venture."  *United States v. Brown*, 587 F.3d 1082, 1089 (11th Cir. 2009) (quotations omitted).  The government does not need to show that the defendant knew all of the details or participated in every aspect of the conspiracy, only that the defendant "knew the

8

essential nature of the conspiracy." *United States v. Garcia*, 405 F.3d 1260, 1269-70 (11th Cir. 2005) (quotations omitted).

Sufficient evidence was presented at trial supporting Gabriel's drug conspiracy conviction. Although Gabriel argues he was convicted under an aiding and abetting theory, Gabriel was convicted as a principal. *See United States v. Brown*, 665 F.3d 1239, 1249 n.5 (11th Cir. 2011) (reviewing sufficiency of evidence challenge in light of jury instruction given). Government witnesses testified at trial regarding Raymond's agreement to supply them with drugs, and that testimony, along with audio recordings played at trial, demonstrated that Gabriel was aware of the agreement and actively furthered the conspiracy by picking up the payment for the drugs, as well as delivering the drugs. Although Gabriel argues the Government's witnesses were not credible, all credibility choices are made in the Government's favor. *See Gamory*, 635 F.3d at 497.

## III.

Gabriel asserts the Government failed to prove beyond a reasonable doubt the elements of money laundering. He contends the Government should have had to prove all of the allegations of intent in Counts 2 and 3 of the indictment in the conjunctive, rather than in the disjunctive. He argues it was unclear whether he actually heard an undercover agent's statements that the funds to be used to

9

complete the sales of the vehicles were drug proceeds, and whether he actually believed the statements. Further, he contends the Government never called a witness to testify whether Gabriel had a duty to file a currency transaction report (CTR) after the sale of the vehicle for which he received currency in an amount of over $10,000 that was the subject of Count 2, which he argues is an essential element of the crime of money laundering. Gabriel asserts that he did not have an obligation to file such a report, and thus, he did not have the intent to disguise or conceal the source of the funds he received from the undercover agent for the vehicle.

We review *de novo* whether the content of instructions that were given are correct statements of law. *United States v. Hill*, 643 F.3d 807, 850 (11th Cir. 2011). For a defendant to be convicted of money laundering under 18 U.S.C. § 1956(a)(3), the government must prove that: (1) the defendant conducted or attempted to conduct a financial transaction, (2) the property involved in the transaction was represented by a law enforcement officer to be the proceeds of narcotics trafficking, and (3) the defendant had the requisite intent required by statute. *See United States v. Schlaen*, 300 F.3d 1313, 1316-17 (11th Cir. 2002) (addressing the elements of a conviction under 18 U.S.C. § 1956(a)(3)(C), which only requires the intent to avoid a transaction reporting requirement).

10

"[I]n order to satisfy the representation element of § 1956(a)(3), the Government need only prove that a law enforcement officer or other authorized person made the defendant aware of circumstances from which a reasonable person would infer that the property was drug proceeds." *United States v. Starke*, 62 F.3d 1374, 1382 (11th Cir. 1995). Government agents are not required to make express statements that the money came from illegal activity, but can make representations that the source of the money came from narcotics activity by their appearance, conduct, and the words that they use. *Id.* at 1382-83.

Further, the statute provides three forms of intent: (1) promoting the carrying on of specified unlawful activity; (2) concealing or disguising the nature, location, source, ownership, or control of property believed to be the proceeds of specified unlawful activity; or (3) avoiding a transaction reporting requirement under state or federal law. 18 U.S.C. § 1956(a)(3)(A)-(C).[3] Despite § 1956(a)(3)'s inclusion of three separate intents, it creates a single offense of money laundering with alternative mental states, subject to one punishment.

---

[3] The three forms of intent enumerated in § 1956(a)(3)(A)-(C) are the same as those in § 1956(a)(1)(A)-(B). *United States v. Seher*, 562 F.3d 1344, 1360 n.18 (11th Cir. 2009). The two statutes serve different purposes: § 1956(a)(3) deals with government sting operations, where the government represents the proceeds are from a specified unlawful activity although in reality they are not; and § 1956(a)(1) addresses those cases where the laundered proceeds actually derive from an unlawful activity. *Id.* at 1361 n.19. However, there is no policy reason for interpreting the language differently when addressing money laundering uncovered in a sting operation and money laundering in general. *Id.* at 1362.

11

*United States v. Seher*, 562 F.3d 1344, 1362-63 (11th Cir. 2009).  To support a conviction under the statute, only one of the intents must be shown, not all three. *Id.* at 1363.  It is permissible to charge the defendant with the three forms of intent in the conjunctive in the indictment, and to instruct the jury as to the three forms of the intent in the disjunctive*.  Id.*

We have listed several factors to help determine whether a transaction was designed to conceal under the second form of intent–the concealment prong.  *See United States v. Magluta*,  418 F.3d 1166, 1176 (11th Cir. 2005).  Evidence that may be considered includes, "statements by a defendant probative of intent to conceal; unusual secrecy surrounding the transaction; structuring the transaction in a way to avoid attention; depositing illegal profits in the bank account of a legitimate business; highly irregular features of the transaction; [and] using third parties to conceal the real owner. . . ." *Id.* (quotations and alteration omitted).  To show concealment, "[t]here must be some evidence that the funds are more concealed after the transaction is completed than before." *See United States v. Johnson*, 440 F.3d 1286, 1293 (11th Cir. 2006).

With respect to the third form of intent under the transaction avoidance prong, we have upheld a sufficiency of the evidence challenge to a money laundering conviction under § 1956(a)(3)(C) where there was evidence presented

12

at trial of structuring deposits under $10,000 to avoid triggering the bank's reporting requirement, as well as evidence that the defendant never personally filled out a CTR following a sale of property worth over $10,000. *Seher*, 562 F.3d at 1353-54, 1364-65. Under 31 U.S.C. § 5331(a), any person who is engaged in a trade or business and who, in the course of such, receives more than $10,000 in currency in one transaction or two or more related transactions must file a report of the transaction with the Financial Crime Enforcement Network. *See United States v. Leventhal*, 961 F.2d 936, 937-38 (11th Cir. 1992) (describing the CTR that a business must file to satisfy the reporting obligation). Under 31 U.S.C. § 5313(a) and 31 C.F.R. § 1010.311, a financial institution must make a report of a deposit of more than $10,000 in cash. *See United States v. Rigdon*, 874 F.2d 774, 777-78 (11th Cir. 1989) (discussing a bank's requirement to file a CTR when it receives at least $10,000 in currency in the context of a conviction under 31 U.S.C. § 5313); 31 C.F.R. § 1010.311 (previously 31 C.F.R. § 103.22 (Oct. 26, 2010)).

Gabriel does not dispute that he conducted or attempted to conduct the two transactions charged in Counts 2 and 3. To satisfy the representation element, the government only needed to make Gabriel aware of circumstances from which a reasonable person would infer the property to be used in the vehicle sale was drug

13

proceeds.  *See Starke*, 62 F.3d at 1382.  Audio recordings presented at trial show that Gabriel conducted one financial transaction and attempted to conduct a second transaction with property that was expressly represented by an undercover law enforcement officer at the time of the transactions to be the proceeds of narcotics trafficking.[4]

Next, the district court did not err in instructing the jury as to the three forms of intent by use of the conjunctive, despite the fact the indictment used the disjunctive to connect the different intents.  *Seher*, 562 F.3d at 1363.  Gabriel assumes that all three intents must be proven at trial, however this Court has held only one of the three intents needs to be proven to uphold a conviction under 1956 (a)(3).  *See id.*

Gabriel's arguments regarding why the evidence was insufficient to prove he had the intent to avoid a transaction reporting requirement are, in large part, regarding EZ Pay Auto's duty to file a CTR.  However, audio recordings presented at trial demonstrated Gabriel had the intent to structure the deposits he would make of the drug proceeds the undercover agent gave him, by making sure he did not deposit over $10,000 and trigger the bank's duty to file a CTR.  The

---

[4] Although Gabriel argues the transcript was in error because the Spanish word for "clean" was translated into the English "launder," this portion of the conversation did not occur in front of Gabriel and, therefore, is not relevant with respect to his sufficiency challenge.

Government presented testimony by a bank manager explaining the bank's duty to file a CTR when an amount of over $10,000 in cash was deposited. Thus, there is evidence he conducted the transaction with the intent to avoid the bank's duty to file a CTR, by structuring. Thus, whether or not EZ Pay Auto had to file a CTR was largely irrelevant. The evidence demonstrating Gabriel intended to structure the deposits of the drug proceeds in both transactions is sufficient to show he intended to avoid a transaction processing requirement under § 1956(a)(3).[5] Accordingly, sufficient evidence supports Gabriel's convictions for money laundering.

IV.

Gabriel contends the district court impermissibly commented on the evidence as it was presented throughout the trial, telling the jury how to interpret various pieces of evidence. He also asserts the court erred in instructing jurors that they did not have to consider the investigative techniques of the government agency in reaching their verdict, without holding a charge conference on the issue. Gabriel provides no supporting record cites or legal cites for these assertions.

---

[5] Although only one of the three intents listed in § 1956(a)(3)(A)-(C) needs to be proven at trial to uphold a money laundering conviction, the record also shows Gabriel intended to conceal the identity of the undercover agent. The evidence of the fictitious lease for the first transaction and the statements by Gabriel that he would keep the vehicles in his name, rather than Cordero's name, demonstrate an intent to conceal.

Under Federal Rule of Appellate Procedure 28(a)(9)(A), an argument must contain "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." Where a defendant notes that an issue exists, without further argument or discussion, the issue is considered abandoned. *Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278-79 (11th Cir. 2009). Gabriel abandoned the two arguments at issue because he only makes passing reference to them in his appellate brief and cites no law with respect to his arguments.

## V.

Gabriel raises multiple instances of prosecutorial misconduct. He argues the Government, during its closing argument, improperly attempted to shift the burden to the defense by suggesting it was Gabriel's responsibility to call witnesses to prove his case. Further, by adopting relevant portions of Raymond's brief, Gabriel argues the Government relied on facts not in evidence at closing. Gabriel contends the Government made references in its closing arguments to telephone records that connected Gabriel to a drug courier who was arrested in Ohio, without ever introducing the records. Further, he argues the Government also claimed that the person seen driving the vehicle accompanying the drug

16

courier was a Hispanic male without presenting any supporting evidence, in order to show that Raymond was the individual driving the truck.

Ordinarily, we review claims of prosecutorial misconduct *de novo* because they are mixed questions of law and fact. *United States v. Merrill*, 513 F.3d 1293, 1306 (11th Cir. 2008). However, if "the defendant did not raise this objection at trial, we review only for plain error that is so obvious that failure to correct it would jeopardize the fairness and integrity of the trial." *Id.* at 1306-07 (quotations omitted). "To establish prosecutorial misconduct, (1) the remarks must be improper, and (2) the remarks must prejudicially affect the substantial rights of the defendant." *Id.* at 1307 (quotations omitted). "[A] prosecutor may not exceed the evidence in closing argument." *United States v. Bailey*, 123 F.3d 1381, 1400 (11th Cir. 1997).

With respect to the Government's statement during closing argument that if Gabriel wanted someone from the IRS to discuss the complex rules regarding bank transactions, he could have called such a witness, those statements were made in the context of the conspiracy charge, not the money laundering charge. Rather than shifting the burden of proof to Gabriel, the prosecutor was attempting to demonstrate that evidence showing how the Florezes handled their money was just one form of evidence the jury could consider with respect to the drug conspiracy

17

charge and the Government had no obligation to present a witness from the IRS. Furthermore, any prejudice that resulted from the prosecutor's comments was diminished by the court's instruction to the jury that the burden of proof was on the Government. *See United States v. Hernandez*, 145 F.3d 1433, 1439 (11th Cir. 1998) (holding where court instructed the jury both before and after closing arguments to decide guilt based solely on the evidence, statement by prosecutor that attacked defense counsel's credibility was not so egregious to mandate a reversal of defendant's conviction). Thus, no plain error occurred that was so obvious that failure to correct it would jeopardize the fairness and integrity of Gabriel's trial. *See Merrill*, 513 F.3d at 1306.

The Government concedes it was improper to refer to facts not in evidence during closing argument. *See Bailey*, 123 F.3d at 1400. However, Gabriel's substantial rights were not affected because the strong evidence supporting his drug conspiracy conviction demonstrates the outcome of his trial would have been the same without the error.

## VI.

Gabriel asserts the district court erred by denying his motion to continue his trial date, which was filed the day before his trial was scheduled to begin. First, Gabriel contends he needed additional time to show that he did not have a

18

personal obligation to file a CTR for the sale of the vehicle that was the subject of Count 2 of the indictment by obtaining bank documents demonstrating such. Second, Gabriel asserts he needed additional time to analyze the accuracy of changes the Government had made to transcripts, which had been provided to Gabriel well in advance of trial.

We review the denial of a request for trial continuance for an abuse of discretion. *United States v. Graham*, 643 F.3d 885, 893 (11th Cir. 2011). "The party denied the continuance must . . . show specific, substantial prejudice in some circumstances, such as when the claim is based on an alleged inadequate opportunity to prepare for trial." *Id.* (quotations omitted). "To make such a showing, the defendant must identify relevant, non-cumulative evidence that would have been presented if [his] request for a continuance had been granted." *United States v. Valladares*, 544 F.3d 1257, 1262 (11th Cir. 2008) (quotations and alteration omitted).

Gabriel has failed to show that the district court's denial of his motion caused him specific, substantial prejudice. As discussed in Issue III above, the evidence was sufficient to convict Gabriel based on his intent to avoid triggering the bank's duty to report and his intent to conceal the owner of the drug proceeds, rather than EZ Pay Auto's duty to file a CTR. Thus, whether Gabriel had a duty to

19

file a CTR was irrelevant with respect to the theory under which the Government convicted Gabriel. Further, Gabriel presented Charles Gillis's testimony that provided the same evidence the bank records would have shown, and thus, the bank records would have been cumulative evidence. Further, Gabriel has pointed to no specific errors in the transcript and notes that he was provided with the transcripts in advance and could have chosen to analyze them at that point. Thus, the district court did not abuse its discretion.

## VII.

By adopting relevant portions of Raymond's brief, Gabriel argues that the cumulative errors during his trial require reversal. He contends that because of the weakness of the Government's case, the judgment was affected by the errors.

Under the cumulative error doctrine, we review the record as a whole to determine whether the defendant was afforded a fundamentally fair trial. *United States v. Lopez*, 590 F.3d 1238, 1258 (11th Cir. 2009). The cumulative effect of several plain or harmless errors can result in the denial of the constitutional right to a fair trial. *Baker*, 432 F.3d at 1223. The cumulative prejudicial impact of the several errors depends upon: (1) the nature and number of the errors committed, (2) the interrelatedness of the errors and their combined effect, (3) the district

20

court's handling of the errors as they arose, and (4) the strength of the government's case. *Id.*

The errors that occurred were with respect to the admission of portions of the government agent's testimony and the prosecutor's reference to facts not in evidence in his closing statements. Both of these errors were interrelated and were regarding Gabriel's connections to drug activity in Ohio and Texas. However, in light of the other evidence presented at trial demonstrating Gabriel's guilt, these errors, taken together, did not deprive Gabriel of a constitutionally fair trial.

## VIII.

Gabriel argues the district court clearly erred at sentencing in attributing to him a drug quantity amount equivalent to 4,396.22 kilograms of marijuana. First, he argues the court erred in its attribution of an amount of cocaine base to him, rather than cocaine hydrochloride. Next, he asserts the drug amounts of two marijuana transactions, one of which involved 113.4 kilograms of marijuana, should not have been attributed to him because the evidence at trial did not connect him to the transactions. He asserts that, because of these errors, his guideline range of imprisonment was incorrectly calculated.

A district court's determination of the drug quantity used to establish a defendant's base offense level is reviewed for clear error. *United States v.*

*Rodriguez*, 398 F.3d 1291, 1296 (11th Cir. 2005).  Even where there is error, however, it is harmless where we "consider[] the proceedings in their entirety and determine[] that the error did not affect the sentence or had but very slight effect." *United States v. Campa*, 529 F.3d 980, 1013 (11th Cir. 2008) (quotations omitted).

When a defendant objects to a factual finding used to calculate his guideline sentence, such as drug amount, the government must establish the disputed fact by a preponderance of the evidence.  *Rodriguez*, 398 F.3d at 1296.  In sentencing a defendant, the district court "may consider any information, including reliable hearsay, regardless of the information's admissibility at trial, provided that there are sufficient indicia of reliability to support its probable accuracy."  *United States v. Lee*, 68 F.3d 1267, 1275 (11th Cir. 1995) (quotations and emphasis omitted).  The district court may rely on such evidence "as long as . . . the court makes explicit findings of fact as to credibility, and the defendant has an opportunity to rebut the evidence."  *United States v. Zlatogur*, 271 F.3d 1025, 1031 (11th Cir. 2001) (quotation omitted).

Assuming, *arguendo*, it was error for the district court to attribute the transaction involving 113.4 kilograms of marijuana to Gabriel based solely on hearsay evidence where the district court did not make any credibility findings regarding the evidence, and when Gabriel may not have had an opportunity to

22

rebut the evidence, Gabriel's Guidelines range is unaffected by the potential error. *See* U.S.S.G. § 2D1.1(c)(3) (providing the base offense level is 34 for at least 3,000 but less than 10,000 kilograms of marijuana).  Based on the evidence at trial, the district court did not clearly err with respect to the remainder of the drugs it attributed to Gabriel.  Even after subtracting the amount arguably improperly attributed to Gabriel, his offense level would remain the same as an amount equivalent to 4,282.82 kilograms is properly attributed to him.  Accordingly, any potential error committed by the district court was harmless.

## IX.

Gabriel argues that, based on the 18 U.S.C. § 3553(a) factors, specifically his young age, lack of a criminal history, completion of some college, past marital engagement, and the low sentence the Government's plea offer made before he proceeded to trial, the district court abused its discretion when it did not impose the mandatory minimum sentence of ten years.  He contends that his total sentence of 148 months' imprisonment, imposed in the middle of the guideline range of 135 to 168 months' imprisonment, was substantively unreasonable.

The district court did not abuse its discretion in sentencing Gabriel to 148 months' imprisonment based on his role in a sophisticated operation that involved the distribution of cocaine, marijuana, and money laundering.  *See Gall v. United*

23

*States*, 128 S. Ct. 586, 591 (2007) (explaining we review the reasonableness of a sentence for abuse of discretion). Although Gabriel argues that the district court should have considered the sentence he would have received had he not proceeded to trial, Gabriel is not entitled to the benefits of a bargain he never agreed to. *See United States v. Barner*, 441 F.3d 1310, 1320 (11th Cir. 2006) ("We cannot hold that one who declines to plead guilty with a recommended sentence acceptable to the Court should nevertheless be given the benefits of a bargain available to, but rejected by, him.") (quotations omitted). The district court considered Gabriel's arguments, the evidence presented at trial, and the presentence investigation report, but determined that a downward variance was not warranted based on the seriousness of the offense. Gabriel's total guideline sentence had an expectation of reasonableness, and he has failed to show that his total sentence is substantively unreasonable based on the § 3553(a) factors. *See United States v. Hunt*, 526 F.3d 739, 746 (11th Cir. 2008) ("Although we do not automatically presume a sentence within the guidelines range is reasonable, we ordinarily expect a sentence within the Guidelines range to be reasonable.") (quotation and ellipsis omitted).

24

X.

Based upon our review of the record and parties' briefs and having had the benefit of oral argument, we affirm Gabriel's convictions and sentences.

**AFFIRMED.**

MOLLOY, District Judge, Concurring:

I join in the majority opinion because there is no question that, under our case law, the opinion is sound. But I am compelled to note a concern.

My concern is the direction that the harmless error doctrine has taken—the development of the "guilty anyway" rule: Even when there is admitted error, even when the prosecution bases its argument on potentially prejudicial extra-record evidence, and even when the evidence is remote beyond relevance, the law requires us to conclude that the mistakes were of no legal consequence because the admissible proof shows that the defendant is "guilty anyway."

The harmless error doctrine might have noble origins. After all, it counsels us to defer to the jury's decision, despite minor errors, when the evidence clearly weighs against the defendant. But, at some point, the doctrine threatens the substantive fairness of a trial, the goal of which is to ferret out the truth through rigorous advocacy under an historical safeguard of adherence to the principles and rules of a fair trial.

When evidence of prior conduct under Rule 404(b) is admitted, the rule should be something more than a rule that can be reduced to an anything goes proposition. When the trial court rightly limits the testimony of a witness (in Agent Livingston's case to a very narrow purpose), it is untoward for the

26

prosecutor to disregard the judge's rulings and to make use of the evidence in a manner that the judge expressly disallowed. To then admit to us on appeal that the inappropriate use of that evidence at trial and in closing argument was an error, but made no difference, disrespects the rule of law and the institutional obligations that lawyers have to the court and to the administration of justice.

The guilty anyway rule does nothing to ensure that an over zealous prosecutor will be constrained by the rules and the trial judge's rulings.  If fact, it does the opposite. It simply enforces the notion that it is easier to ask for forgiveness on appeal than it is to ask permission at trial.

But, as the majority points out, the trial court's application of the rules of procedure, the rules of evidence, and our application of the harmless error doctrine do not occur in a vacuum.  The trial judge, for instance, can only serve his or her function in a system of advocacy when the advocates exercise their institutional roles and obligations.  This means, in part, that defense counsel must raise meritorious objections at trial, rather than wait and present the objections for the first time on appeal.  Tactical decisions are a part of every trial, but tactics do not usurp the obligation to toe the mark when it comes to ensuring fairness in the trial process.  In this case, as the majority notes, the constraints placed on our review require defense counsel to make a proper record.

I join the majority, but I have grave concerns that the trial process increasingly drifts toward not a search for the truth through a rigorous rule based undertaking but a process where close enough counts in government work. If the law was not so clear on the issues raised in this appeal, I would reverse the convictions and send the case back for a new trial where the lawyers are compelled to do the job they are supposed to do.