[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-10508
_____

D.C. Docket No. 2:14-cr-00114-SLB-JEO-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MARCELLA TRUSS,
a.k.a. Marcy,
HOWARD LENARD CARROWAY,
a.k.a. Bo,
a.k.a. Beano,
MARTEE RAY DAVIS,
a.k.a. Martiece,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Northern District of Alabama
_____

(January 18, 2018)

Before TJOFLAT and MARTIN, Circuit Judges, and MURPHY,[*] District Judge.

PER CURIAM:

Marcella Truss, Martee Davis, and Howard Carroway appeal following their convictions from a fraud scheme in Alabama.  The three defendants were involved in an extensive conspiracy to defraud Gulf Coast Claims Facility ("GCCF") by filing false claims for damages arising from the BP oil spill.  Truss and Carroway challenge their underlying convictions and all three Defendants challenge their sentences.

Truss and Carroway both argue on appeal that the district court erred by denying their motions for judgment of acquittal.  Truss also makes two additional arguments.  She argues that the district court erred when it questioned witnesses and commented on evidence.  And she also argues that the district court erred when it admitted evidence against Carroway because its prejudice to Truss outweighed its probative value as to Carroway.

With respect to sentencing, Davis and Carroway argue that the district court erred by imposing the sophisticated means enhancement under U.S.S.G. § 2B1.1(b)(10)(C) and by not resolving their objections to the role in the offense enhancement under U.S.S.G. § 3B1.1.  Carroway further objects that the district court erred by imposing an obstruction of justice enhancement under U.S.S.G. §

---

[*] Honorable Stephen J. Murphy, III, United States District Judge for the Eastern District of Michigan, sitting by designation.

2

3C1.1 because it constituted impermissible double counting.  Finally, Truss, Davis, and Carroway object that their sentences are procedurally and substantively unreasonable because the district court penalized them for their refusal to accept responsibility and plead guilty.

The Court will first address Truss's and Carroway's merits arguments and then address each of the sentencing arguments in turn.

## I.    MERITS

*A. Marcella Truss*

*1. The District Court's Questioning*

Truss insists she did not have a fair trial due to the district court's actions.  She argues that the court's questioning of witnesses, its directives to the Government, and its comments concerning the evidence were improper.  According to Truss, the court abandoned its neutral role and became a de facto prosecutor.  We disagree.

Truss never objected to the court's conduct during trial.  On one occasion—out of the jury's hearing—Davis's attorney[1] stated that he had a "concern" that the court was "leading the prosecution in presenting its case" on a particular evidentiary matter.  But an objection was never raised, then or after, concerning the court's conduct.

---

[1] At the beginning of the trial, all counsel and the court agreed that an objection by one of the lawyers was an objection on behalf of all the co-defendants.

Absent an objection, the Court reviews Truss's claims "only for plain error." *United States v. Rodriguez*, 627 F.3d 1372, 1380 (11th Cir. 2010). Under that standard of review, Truss must show that "(1) an error occurred; (2) the error was plain; (3) it affected [her] substantial rights; and (4) it seriously affected the fairness of the judicial proceedings." *Id.* (quoting *United States v. Gresham*, 325 F.3d 1262, 1265 (11th Cir. 2003)). Moreover, "improper comments by a judge warrant reversal only if they had such a prejudicial effect on the jury that they denied the defendant a fair trial." *United States v. Hill*, 643 F.3d 807, 849 (11th Cir. 2011); *see also United States v. Hesser*, 800 F.3d 1310, 1330 (11th Cir. 2015) (reasoning that "the few errors we have identified did not impact the jury's verdicts.").

None of the instances cited by Truss meet this high bar. For one, most of the instances she points to were out of the hearing of the jury, and she gives no indication that the jury was affected by them. The few cited instances that did occur before the jury involved the court clarifying testimony. For instance, when Jerome Rudolph testified that he signed a release as to his rights to sue Truss's company, the court merely asked him whether he was working for the company at the time, and in what capacity—facts that would assist the jury in understanding the relevant circumstances. During the direct examination of Felicia Youngblood, the court disclosed that it intended to ask a follow-up question of the witness

unless the Government intended to ask it, and during the direct examination of Cedric Powell, the court asked a single question after the Government passed the witness. The court's questions were natural follow-ups to the witnesses' prior answers and consistent with the trial judge's proper role in "elicit[ing] facts not yet adduced" and "maintain[ing] the pace of the trial." *Hanson v. Waller*, 888 F.2d 806, 813 (11th Cir. 1989) (quoting *Moore v. United States*, 598 F.2d 439, 442 (5th Cir. 1979)). The court likewise attempted to maintain the pace of the trial when it asked Robert Truss, Jr. if he had previously heard the tapes the Government was about to play. And in at least one instance cited by Truss, the court's interjection went in her favor: the court urged the Government to ask witness Cametrica Davis what was in her plea agreement to ensure that the jury was adequately informed of her incentive for the testimony.

Asking witnesses to clarify the evidence presented is a task "entirely proper" for the court to undertake. *United States v. Wright*, 392 F.3d 1269, 1275 (11th Cir. 2004) (quoting *Hanson*, 888 F.2d at 813). The interjections cited by Truss did not demonstrate bias, much less bias so egregious that it impacted the verdict. The court's questions and statements were therefore not error warranting reversal.

### 2. *The Evidence Against Carroway*

Truss also argues that the district court erred by admitting evidence against co-defendant Carroway: a recorded phone call of Carroway offering assurances to

5

one of the false claimants involved in the conspiracy and mentioning that "his sister" had a lawyer.  Truss objected on three grounds: (1) the timing of the call rendered it inadmissible as a conversation between co-conspirators, (2) the evidence was more prejudicial than probative, and (3) the generic reference to Carroway's sister would confuse the jury.  The Court agreed on the issue of timing, but admitted the evidence against Carroway to show consciousness of guilt.  And before playing the conversation for the jury, the court specifically instructed the jury not to consider it in any way against Truss.

Jurors are presumed to follow a court's instructions, *Brown v. Jones*, 255 F.3d 1273, 1280 (11th Cir. 2001), and Truss has offered nothing to challenge that presumption.  Accordingly, Truss has not shown that the district court's decision to admit the evidence rested upon a "clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact."  *United States v. Bornscheuer*, 563 F.3d 1228, 1238 n.25 (11th Cir. 2009).  The district court did not err in admitting the evidence with an instruction.

*3. The Motion for Acquittal*

Lastly, Truss asserts that the district court should have granted her motion for acquittal on the conspiracy count.  The Government was required to prove that there was an agreement between Truss and one or more persons to achieve an unlawful objective, that she knowingly and voluntarily participated in the

6

agreement, and that one of the conspirators committed an overt act in furtherance of the agreement. *United States v. Hasson*, 333 F.3d 1264, 1270 (11th Cir. 2003). According to Truss, she was convicted on limited evidence: the false claims were filed with a computer for which she provided internet access, the false W-2s were from the company she owned, and fraudulent phone calls were placed from phone numbers associated with an account she paid for. She argues that, without more, there was not enough evidence to prove an agreement to commit an illegal act.

But there was much more evidence of an agreement. The fraudulent claims followed a familiar pattern: one of the defendants would contact a person, and tell the person that money was being made available from a lawsuit or the oil spill. Money was then deposited in the person's bank account—and the defendants would tell the person how to withdraw the money and to give a portion of it to Truss, Davis, or Carroway. Jerome Rudolph, Montiest Rudolph, Metilda Lanier, and Ruby Bush dealt solely with Truss; she told them of the money, directed them, and was the ultimate recipient of the cash. In other cases, however, other people were involved. Aquarnesha Claud received her check from Truss, but had previously given her information to Truss's son, Robert. And when Robert helped Felicia Youngblood withdraw money in the form of cashier's checks, he called Truss to get directions on what to do with them. Marchero Montgomery also dealt with both Truss and Robert in getting her money. Although Don Bush dealt

7

mostly with Truss, when he received his money Truss told him to give it to Martee Davis rather than to her.

In sum, there was more than enough evidence for the jury to find that Truss was a knowing participant who agreed with others to defraud the GCCF. The district court did not err in denying Truss's motion for acquittal.

*B. Howard Carroway*

Carroway maintains the district court should have granted his motion for acquittal on the two obstruction-of-justice counts. A person violates 18 U.S.C. § 1512(b)(3) when he attempts to corruptly persuade another person with intent to "hinder, delay, or prevent" communication of information relating to the commission or possible commission of a federal offense to a law enforcement officer of the United States. The Supreme Court construed similar language in *Fowler v. United States*, 563 U.S. 668, 677–78, 131 S. Ct. 2045, 2052 (2011), and held that the Government must show that it is "reasonably likely under the circumstances that . . . at least one of the relevant communications would [be] made to a federal officer."

The charges against Carroway arose from the testimony of two witnesses: Andre Dale and Selena Fleeton. They testified that Carroway gave them a piece of paper with a phone number at the top of it. Carroway told them to call the number and use the information on it to answer any questions they were asked. Neither

was told whose number it was and neither called the number. On appeal, Carroway concedes that the information on the papers was false, but his argument is that "there was no competent evidence from which a jury could determine that there existed a reasonable likelihood Carroway intended Dale or Fleeton to convey false information to a federal law enforcement officer."

The argument is simply incorrect. Another witness, Drew Brewer, testified that the number was for the U.S. Attorney's office in Birmingham, Alabama and the U.S. attorney is unquestionably a federal law enforcement agency. *See* 18 U.S.C. § 1515(4)(A). The timing was also telling: Carroway gave Fleeton and Dale the sheets shortly after the FBI had begun contacting claimants, including Fleeton. It is of no moment that Fleeton and Dale did not know, at the time, whose phone number it was; the statute does not require such knowledge. There was ample evidence for a jury to find that Carroway violated 18 U.S.C. § 1512(b)(3), so the district court did not err in denying Carroway's motion for acquittal.

## II.    SENTENCING

*A. "Sophisticated Means"*

A district court's finding that a defendant used sophisticated means is a finding of fact reviewed for clear error. *United States v. Barrington*, 648 F.3d 1178, 1199 (11th Cir. 2011). Review for clear error is deferential, and we will not disturb a district court's findings unless there is a definite and firm conviction that

9

a mistake was committed.  *United States v. Ghertler*, 605 F.3d 1256, 1267 (11th Cir. 2010).

The Guidelines provide for a two-level enhancement if the offense "involved sophisticated means."  U.S. Sentencing Guidelines Manual § 2B1.1(b)(10)(C) (U.S. Sentencing Comm'n 2004) ("U.S.S.G.").  "Sophisticated means" is defined in the commentary to § 2B1.1 as "especially complex or especially intricate offense conduct pertaining to the execution or concealment of the offense."  *Id.* § 2B1.1, cmt. (n.8(B)) (2012).  Conduct like hiding assets or transactions "through the use of fictitious entities, corporate shells, or offshore financial accounts" ordinarily indicates sophisticated means.  *Id.*  There is no requirement that each of a defendant's individual actions be sophisticated.  *Ghertler*, 605 F.3d at 1267.  Rather, it is sufficient if the totality of the scheme was sophisticated.  *Id.*

In *Ghertler*, the defendant perpetrated a wire fraud scheme by posing as a high ranking official and duping companies into sending him substantial funds.  *Ghertler*, 605 F.3d at 1260–61.  Although the defendant sometimes made little or no effort to conceal the fraud or his identity, he: (1) conducted extensive research on the victim companies; (2) used unwitting couriers to pick up and deliver some of the proceeds of his frauds; (3) forged company documents; (4) on at least one occasion, referenced a confidential internal account in a forged document; and (5) had funds transferred to the accounts of unwitting third parties, who, in turn,

10

withdrew and transferred cash to him. *Id.* at 1268. Although "a close question," we held that the district court did not clearly err in applying the sophisticated means enhancement. *Id.* at 1267–68.

Likewise, here, the district court did not clearly err in applying the enhancement. The defendants recruited 37 individuals to file 50 separate, fraudulent claims for payment. In each of these claims, the defendants electronically filed numerous false documents, including W-2 forms, payroll stubs, and lay-off notices. Furthermore, once the individual claimants received their funds, the defendants would use various transactions to procure a portion of the proceeds. The defendants essentially used Truss's business as a front to coordinate an expansive fraud against the GCCF that involved many individuals and numerous false documents. Accordingly, the district court did not clearly err in finding that the sophisticated means enhancement applied.

## B. *"Aggravating Role"*

When appropriate, we review "*de novo* legal questions concerning the Federal Rules of Criminal Procedure." *United States v. Spears*, 443 F.3d 1358, 1361 (11th Cir. 2006). And we review a district court's determination that a defendant is subject to a § 3B1.1 role enhancement as an organizer or leader for clear error. *United States v. Ramirez*, 426 F.3d 1344, 1355 (11th Cir. 2005).

11

When an argument is raised for the first time on appeal, however, we review for plain error. *See United States v. Peters*, 403 F.3d 1263, 1270–71 (11th Cir. 2005).

A district court may increase a defendant's offense level by four levels "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a).  The commentary to the section explains that when, as here, a criminal organization is relatively small, "the distinction between organization and leadership, and that of management and supervision, is of less significance than in larger enterprises that tend to have clearly delineated divisions of responsibility." U.S.S.G. § 3B1.1 cmt. (backg'd).  Section 3B1.1(b) provides a 3-level increase "[i]f the defendant was a manager, or supervisor (but not organizer or leader)" and the criminal activity involved five or more participants and was "otherwise extensive." U.S.S.G. § 3B1.1(b).  A defendant's assertion of control over only one other participant is sufficient to sustain a § 3B1.1(b) role enhancement. *Id.* § 3B1.1, cmt. (n.2).

The commentary to § 3B1.1 sets out several factors for courts to consider in determining if the defendant is an organizer or leader, as opposed to a mere manager or supervisor, including the following: (1) the defendant's exercise of decision making authority; (2) the nature of participation in the offense; (3) recruiting accomplices; (4) the claimed right to a larger share of the fruits of the crime; (5) the degree of participation in planning or organizing the crime; (6) the

12

nature and scope of the illegal activity; and (7) the degree of control and authority exercised over others. U.S.S.G. § 3B1.1, cmt. (n.4).

All of the factors need not be present. *United States v. Martinez*, 584 F.3d 1022, 1026 (11th Cir. 2009). Instead, the factors are "merely considerations for the sentencing judge." *Id.* Section 3B1.1 does, however, require the exercise of some authority in the organization, the exertion of some degree of control, influence, or leadership. *Id.* The government must prove the existence of an aggravating role by a preponderance of the evidence. *Id.* at 1026–27.

We have previously held that recruitment and instruction of co-conspirators, in concert with other factors, shows the necessary degree of control, influence, or leadership to qualify a defendant for a § 3B1.1 role enhancement. *See, e.g.*, *United States v. Caraballo*, 595 F.3d 1214, 1232 (11th Cir. 2010) (holding that the district court did not clearly err in applying a leadership enhancement when, among other things, the government presented evidence that defendant had recruited another participant and given specific instructions on how to commit the crime). Additionally, we have affirmed a defendant's aggravating role enhancement in at least one case when the sole criterion discussed was the defendant's recruitment of others. *United States v. Thomas*, 446 F.3d 1348, 1355 n.2 (11th Cir. 2006).

Davis initially objected to his role enhancement, but he withdrew that objection before sentencing. As a result, and contrary to Davis's position on

13

appeal, he had no objection to his § 3B1.1(b)  role enhancement before the court at the time he was sentenced.  The district court did not commit error under Federal Rule of Criminal Procedure 32 by not addressing an objection that was not before it.  Because Davis withdrew his objection, we review his challenge for plain error. *See Peters*, 403 F.3d at 1270–71.  Because Carroway objected to his enhancement at the time of sentencing, we review his challenge for clear error.  *See Ramirez*, 426 F.3d at 1355.

Here, the district court did not clearly err in applying the § 3B1.1(b) adjustment to either Davis or Carroway.  They both recruited claimants to provide false claims to GCCF.  We have previously determined that similar actions demonstrated the necessary degree of control, influence, or leadership to qualify for a sentence enhancement pursuant to § 3B1.1.  *See, e.g.*, *Caraballo*, 595 F.3d at 1232; *Thomas*, 446 F.3d at 1355 n.2.  Davis regularly called GCCF to find updates about the state of the claims, and Carroway provided two claimants with a script and instructed them to provide false statements to investigators concerning the fraud—recruitment like that also supports a § 3B1.1 enhancement.  *Caraballo*, 595 F.3d at 1232.  Thus, we affirm the district court's role enhancement for both Davis and Carroway.

*C. "Obstruction of Justice" and Double Counting*

We review a district court's application and interpretation of the Sentencing Guidelines *de novo*. *United States v. Murphy*, 306 F.3d 1087, 1089 (11th Cir. 2002). A claim of double counting presents a question of law that we review *de novo*. *United States v. Naves*, 252 F.3d 1166, 1168 (11th Cir. 2001). When an argument is raised for the first time on appeal, we review for plain error, *see Peters*, 403 F.3d at 1270–71, and an error is not plain unless it is contrary to precedent directly resolving a legal issue, *United States v. Lejarde-Rada*, 319 F.3d 1288, 1291 (11th Cir. 2003).

The district court did not err by applying the § 3C1.1 enhancement. "Impermissible double counting occurs only when one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by application of another part of the Guidelines." *Naves*, 252 F.3d at 1168. Double counting is permissible when the Sentencing Commission intended the result and each section concerns conceptually separate notions related to sentencing. *Id.*

Pursuant to § 3C1.1 application note 8, if a defendant is convicted of an obstruction offense and an underlying offense (the offense with respect to which the obstructive conduct occurred), the count for the obstruction offense will be grouped with the count for the underlying offense under § 3D1.2(c). U.S.S.G.

15

§ 3C1.1, cmt. (n.8).  The offense level for that group of counts will be the offense level for the underlying offense increased by the two-level adjustment specified by § 3C1.1.  *Id.*

Section 3C1.1's application note 7 states that if the defendant is convicted of an offense covered by § 2J1.2 (Obstruction of Justice), the adjustment is not to be applied to the offense level for that offense, except if a significant further obstruction occurred during the investigation, prosecution, or sentencing of the obstruction offense itself.  *Id.* § 3C1.1, cmt. (n.7).  Furthermore, § 2J1.2's application note 3 states, "[i]n the event that the defendant is convicted of an offense sentenced under this section as well as for the underlying offense, . . . see the commentary to Chapter Three, Part C."  *Id.* § 2J1.2, cmt. (n.3).

Application note 8 of 3C1.1 clearly states that if a defendant is convicted of obstruction, as well as the underlying offense, the obstruction offense is grouped together with the other offense, and the enhancement is applied.  U.S.S.G. § 3C1.1, cmt. (n.8).  Carroway's construction of § 2J1.2 is misguided.  Although § 3C1.1's application note 7 states that the enhancement does not apply when a defendant is convicted of an obstruction of justice offense, application note 3 of § 2J1.2 cites to § 3C1.1 when a defendant is charged with obstruction of justice and the underlying offense. *Id.* §§ 3C1.1, cmt. (n.7); 2J1.2, cmt. (n.3).  Thus, the Sentencing Commission clearly intended the enhancement to apply in Carroway's case

16

because his conviction for obstruction of justice was for obstructing the investigation of the conduct underlying his various fraud convictions.

## D. Reasonableness

The party challenging a sentence bears the burden to show that the sentence was unreasonable in light of the record and the § 3553(a) factors. *United States v. Tome*, 611 F.3d 1371, 1378 (11th Cir. 2010). We will reverse only if "left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *United States v. Irey*, 612 F.3d 1160, 1190 (11th Cir. 2010) (*en banc*).

Reviewing the reasonableness of a sentence consists of a two-step process, in which we ensure that the sentence is procedurally and substantively reasonable. *Gall v. United States*, 552 U.S. 38, 51 (2007). A sentence is procedurally unreasonable if the district court, among other things, failed to consider the § 3553(a) factors. *See Gall*, 552 U.S. at 51. The district court is generally not required to explicitly discuss each of the § 3553(a) factors—its consideration of the defendant's arguments at sentencing and statement that it took the factors into account is sufficient. *United States v. Sanchez*, 586 F.3d 918, 936 (11th Cir. 2009).

When a defendant failed to object in the district court, we will review procedural reasonableness, and other trial or sentencing issues generally, for plain

17

error.  *United States v. Vandergrift*, 754 F.3d 1303, 1307 (11th Cir. 2014) (reasonableness); *United States v. Olano*, 507 U.S. 725, 731 (1993) (trial issue). To demonstrate plain error, a defendant must show that there is (1) an error (2) that is plain (3) that has affected the defendant's substantial rights.  *Vandergrift*, 754 F.3d at 1307.  If those three prongs are met, we may exercise discretion to correct the error if it seriously affects the fairness, integrity, or public reputation of judicial proceedings.  *Id.*

We examine whether a sentence is substantively reasonable in light of the totality of the circumstances.  *Gall*, 552 U.S. at 51.  The district court must impose a sentence "sufficient, but not greater than necessary, to comply with the purposes" listed in § 3553(a)(2), including the need to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, deter criminal conduct, and protect the public from the defendant's future criminal conduct.  *See* 18 U.S.C. § 3553(a)(2).  In imposing a particular sentence, the court must also consider the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the applicable guideline range, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims.  *Id.* § 3553(a)(1), (3)–(4), (6)–(7).

The sentencing court need not weigh each factor equally, but instead may give great weight to one factor over the others.  *United States v. Rosales-Bruno*,

789 F.3d 1249, 1254 (11th Cir. 2015).  Assigning weight to a particular factor is committed to the discretion of the district court.  *Id.*  Absent clear error, we will not reweigh the § 3553(a) factors.  *United States v. Langston*, 590 F.3d 1226, 1237 (11th Cir. 2009).  A district court, however, should not focus on one factor "single-mindedly" to the detriment of other factors, and a court's unjustified reliance on any one § 3553(a) factor may suggest an unreasonable sentence.  *United States v. Crisp*, 454 F.3d 1285, 1292 (11th Cir. 2006).

When appropriate, we will review the reasonableness of a sentence under a deferential abuse-of-discretion standard.  *Gall*, 552 U.S. at 41.  A district court can abuse its discretion when it (1) fails to consider relevant factors that were due significant weight, (2) gives an improper or irrelevant factor significant weight, or (3) commits a clear error of judgment by balancing the proper factors unreasonably.  *Irey*, 612 F.3d at 1189.  We have disapproved of rigid and mechanical sentencing procedures which bypass the defendant's individual circumstances and mete out a sentence based on the category of crime.  *United States v. Roper*, 681 F.2d 1354, 1361 (11th Cir. 1982).  But we ordinarily expect a guidelines sentence to be reasonable.  *United States v. Hunt*, 526 F.3d 739, 746 (11th Cir. 2009).

"The Constitution forbids the exaction of a penalty for a defendant's unsuccessful choice to stand trial."  *Smith v. Wainwright*, 664 F.2d 1194, 1196

19

(11th Cir. 1981) (habeas case).  It is well-established, however, that absent a demonstration of judicial vindictiveness or punitive action, a defendant may not complain simply because he received a heavier sentence after trial.  *See Blackmon v. Wainwright*, 608 F.2d 183, 184 (5th Cir. 1980) (habeas case).  Judicial vindictiveness and putative action have been found in cases when judges coerce defendants to plea under threat of higher sentences.  *Id.*

In *Smith*, we held that a discrepancy between the defendant's actual sentence and that which he would have received had he foregone trial to plead guilty did not invalidate the sentence.  *Smith*, 664 F.2d at 1197.  Furthermore, we have also stated that such facts may be properly considered as part of "the total picture" at sentencing.  *See United States v. Castillo-Valencia*, 917 F.2d 494, 501 (11th Cir. 1990).

Here, the defendants did not raise their vindictive sentencing challenges before the district court, and it is also unclear whether those challenges may have implicated procedural reasonableness, substantive reasonableness, or both. Nevertheless, the challenges fail under any applicable standard of review.

As noted above, the district court voiced its frustration about the defendants' refusal to accept responsibility, but it did not coerce the defendants into entering pleas under threat of potentially higher total sentences.  *Blackmon*, 608 F.2d at 184. At sentencing, the court recognized the fact that the defendants refused to accept

responsibility even after their trial and in the light of overwhelming evidence.  The court also wished to account for the enormous extent of the fraud before formulating total sentences based on these concerns.  Under our precedents, the district court was entitled to consider the defendants' failure to accept responsibility when formulating a proper sentence.  *Castillo-Valencia*, 917 F.2d at 501.  Moreover, the court sentenced Truss and Davis at the bottom of the applicable guideline ranges (135 and 159 total months, respectively) and the court sentenced Carroway below the applicable guideline range (96 total months).  Thus, the court did not impose overly harsh or punitive total sentences, and we generally find such total sentences reasonable.  *Hunt*, 526 F.3d at 746.  Accordingly, we will affirm in this respect.

**AFFIRMED.**